C. D. COTNER *v.* INTERNATIONAL HARVESTER Company

76-232             545 S.W. 2d 627

Opinion delivered January 24, 1977
(Division II)

*Jones & Petty,* for appellant.

*Bridges, Young, Matthews & Davis,* for appellee.

JOHN A. FOGLEMAN, Justice. Appellant Cotner sued International Harvester Company seeking to recover damages, alleging breach of warranties of merchantability and of fitness for a particular purpose on the sale of two new large 1972 model International Transtar trucks. He appeals from a judgment based upon a directed verdict in favor of

appellee International Harvester Company. Appellant asserts five points for reversal. Since we feel that we must affirm the judgment upon one of these points, even assuming that appellant is correct on all the others, we will discuss that point only. It is:

THERE WAS SUFFICIENT EVIDENCE OF NOTICE GIVEN BY PLAINTIFF, WITHIN A REASONABLE TIME TO DEFENDANT OF THE BREACH OF WARRANTIES TO CONSTITUTE A JURY QUESTION ON THE ISSUE OF NOTICE.

Since we disagree with appellant and agree with the circuit judge on this point, even when we view the evidence in the light most favorable to appellant, appellant had no cause of action against appellee.

A buyer is required to notify the seller of any breach within a reasonable time after the buyer discovers it or he is barred from any remedy. Ark. Stat. Ann. § 85-2-607 (3) (a) (Add. 1961). The trucks were purchased in February, 1972 and delivered in July, 1972. Appellant testified that they ran well and served his purposes until after they had been driven a minimum of 120,000 miles. The first trouble in August, 1973, arose from a problem with air filters. The basis of appellant's claim, insofar as this appeal is concerned, however, was alleged defects in the flywheel housing and transmissions. The first problem of any significance with the truck, which appellant designates as No. 5, occurred in Ft. Worth on October 29, 1973, when the flywheel housing broke. Repairs were made at appellee's company store there.[1] It was again repaired in Amarillo, Texas, at the International Harvester store on May 25, 1974. On September 4, 1974, repairs were made in Amarillo at Quality Truck Repair (which does not appear to have had any connection with appellee). This truck was taken into the shop at Razorback International, an independent dealer, in April, 1975. It had then recorded at least 243,000 miles of travel.

The first problem with the other truck, No. 4, arose

---

[1]This truck had previously undergone considerable repairs due to damages suffered in a wreck in June, 1973.

when the flywheel housing broke in June, 1974 and repairs were made by an independent International Harvester dealer.[2] The next necessity for repair occurred in January, 1975. This was done at R & D Truckers in Pine Bluff. Repairs for piston and crankshaft trouble (problems that were not related to the flywheel or transmission) were done by Razorback International in October, 1974, and again in April, 1975, when it had traveled approximately 240,000 miles. At least a part of this work was done under the warranty.

During the time Cotner was having these problems with the trucks, he admitted that he did not write International Harvester or telephone International Harvester headquarters. He only talked with Mr. King, a salesman, who had sold him the trucks, about replacing them, some time in the give Cotner a better deal. Cotner also talked to the mechanics dependent dealership was established, thinking they would give Cotner a better deal. Cotner also talked to the mechanics at the International store in Pine Bluff about the cause of his flywheel housing problem. He said they didn't know what was causing it.

Appellant argues that notification was sufficient to meet the statutory requirement because the repairs on truck No. 5 were made in October, 1973 and May, 1974, at International Harvester stores in Ft. Worth and Amarillo, Texas; because he had talked to the salesman for International Harvester in Pine Bluff about trading the trucks because they weren't doing the job for which he had purchased them; and because he had talked to the mechanics in Pine Bluff about the flywheel housing and transmission problem. He says that since there was a statement on the Owner's Service Policy that emergency warranty service could be obtained from the nearest International Harvester dealer and that there were more than 3,-000 authorized International truck service centers through 50 states, appellee had notice of the specific problem and undertook its repair. Considered either collectively or individually, we find no substantial evidence of notification in these facts.

---

[2]This truck had also undergone repairs for damages suffered in wrecks in June and September, 1973.

It is true that the requirements of notification are not stringent. Notice need only be sufficient to inform the seller that the transaction is claimed to involve a breach and thus to open the way for negotiation of a normal settlement. It must, however, be sufficient to let the seller know that the transaction is still troublesome and must be watched. Comment 4, § 85-2-607. The purpose of the requirement is to enable the seller to minimize damages in some way, such as correcting the defect and to give some immunity from stale claims. *L. A. Green Seed Co. of Arkansas* v. *Williams*, 246 Ark. 463, 438 S.W. 2d 717. Ordinarily, the sufficiency of notice is a question of fact for the jury based upon the circumstances. *L. A. Green Seed Co.* v. *Williams*, supra.

The intent of the provision, however, is that the seller be informed that the buyer proposes to look to him for damages for breach. Comment 4, Ark. Stat. Ann. § 85-2-607; Anderson, Uniform Commercial Code (2d Ed.) 207, § 2-607.4; *Dailey* v. *Holiday Distributing Corp.*, 260 Iowa 859, 151 N.W. 2d 477 (1967). The notice must be more than a complaint. It must, either directly or inferentially, inform the seller that the buyer demands damages upon an asserted claim of breach of warranty. *Dailey* v. *Holiday Distributing Corp.*, supra. In spite of the fact that the question of reasonableness of notice, as to time, form and substance is usually a question of fact, where all the evidence is such that it can lead reasonable minds to only one conclusion as to the sufficiency of notice, the question presented is one of law to be resolved by the court. *Dailey* v. *Holiday Distributing Corp.*, supra. Where a manufacturer or seller is never advised of a claimed breach of implied warranty or that the buyer is looking to it for compensation or reimbursement, there is not a notification sufficient to hold the manufacturer or seller liable. *Dailey* v. *Holiday Distributing Corp.*, supra; *Lynx, Incorporated* v. *Ordnance Products, Inc.*, 273 Md. 1, 327 A. 2d 502 (1974).

In this case, all indications from the skimpily abstracted evidence are that Cotner paid all repair bills relating to the defects of which he now claims, except for the last occasion, when the repairs were done by Razorback International, an independent dealer, which was not even in existence when the sale was made or when most of the problems with these defects were encountered. Conversation with a salesman

which appellant himself characterizes as relating to "trading the trucks in" could not be taken to constitute notice, even if we could say that the salesman was a person to whom effective notification could be given. Cotner's asking mechanics employed by appellee how he could stop the trouble could not constitute notification to the seller. To say the least, in no instance did Cotner ever indicate that he looked to appellee to remedy the situation or to pay any damages. *Boeing Airplane Co. v. O'Malley*, 329 F. 2d 585 (8th Cir., 1964); *Overland Bond & Investment Corp.* v. *Howard*, 9 Ill. App. 3d 348, 292 N.E. 2d 168; and *Morris Plan Leasing Co.* v. *Bingham Feed & Grain Co.*, 259 Ia. 404, 143 N.W. 2d 404, relied on by appellants, are readily distinguishable on the facts.

The judgment is affirmed.

We agree. BYRD, ROY and HICKMAN, JJ.