703 P.2d 577

**MOUNTAIN–AIRE REFRIGERATION AND AIR CONDITIONING CO., INC., Plaintiff/Appellee,**

v.

**GENERAL ELECTRIC COMPANY, Defendant/Appellant.**

No. 2 CA–CIV 5376.

Court of Appeals of Arizona, Division 2, Department A.

July 11, 1985.

Miles F. Westover, Tucson, for plaintiff/appellee.

Jones, Dickerman, Nuckolls, Edwards & Smith, P.C. by Philip Hawley Smith, Tucson, for defendant/appellant.

## OPINION

HOWARD, Judge.

Mountain-Aire Refrigeration and Air Conditioning Company, Inc. (Mountain-Aire) sued General Electric Company (G.E.) and Master Communications, Inc. (Master). Counts I and II of the complaint alleged the breach of express warranties contained in a conditional sales contract; Count III claimed a breach of implied warranty and Counts IV and V alleged consumer fraud.

Earlier in the case G.E. made a motion for partial summary judgment on Counts III through V, which was granted. The granting of that motion is not at issue here. G.E. later made a motion for summary judgment on Counts I and II, which the trial court granted. Mountain-Aire moved for a new trial, which was granted by the trial court. G.E. contends the trial court abused its discretion in granting the new trial. We do not agree. Mountain-Aire is an air conditioning, refrigeration and heating contractor operating in Tucson which provides both residential and commercial sales and services. It utilizes a mobile communication service in its business. It had been using communication equipment manufactured by Motorola, including a Motorola repeater unit located on Mt. Lemmon which relayed the signals from a base station to the mobile units. It was also leasing from General Communications Service a "patch-work" telephone system which relayed incoming customer calls to various employees' residences for night and weekend business orders. This communication system was unsatisfactory.

In 1978, Master, a franchisee of G.E. for both the sale and service of G.E. equipment, replaced the Motorola equipment and General Communication Service system with G.E. equipment. By means of a conditional sales contract, Mountain-Aire purchased from G.E. the equipment necessary to replace an existing system. The contract, dated July 18, 1978, expressly warranted that the equipment conformed to specifications and was free from defects in materials, workmanship and title. The warranty was to last for one year, commencing upon the installation of the equipment or two months from the date of the shipment from the factory, whichever occurred first. However, the contract warranty was specifically conditioned upon the buyer promptly notifying G.E. of any defects within the warranty period. It is this notice requirement which formed the basis of G.E.'s motion for summary judgment on Counts I and II. Master also sold Mountain-Aire a monthly maintenance contract and leased it a new repeater site on Mt. Lemmon.

G.E. filed a request for interrogatories which contained, inter alia, the following question:

"12. State the exact wording of the 'notice' and the applicable time limits referred to in paragraph XVI of the First Amended Complaint, explaining by whom and when *this* defendant is claimed to have received same."

The answer given by Mountain-Aire was as follows:

"January 2, 1981; letter to General Electric Credit Corp.

March 2, 1981; letter to General Electric Credit Corp.

July 9, 1981; letter to General Electric Credit Corp.

August 12, 1981; letter to General Electric Credit Corp."

The record is also clear that the warranty period ended on June 21, 1980. According to the testimony of Ruth Birdsong, an employee of Mountain-Aire, she claims to have made, on some date *after* July 1, 1980, a telephone call to G.E. about the equipment.

The record also contains G.E.'s request for admissions to which Mountain-Aire had failed to respond. One of those requests asked Mountain-Aire to admit:

"... That any/all express warranties of GENERAL ELECTRIC provided in the Conditional Sales Contract made subject of this litigation had expired by their terms on or before July 15, 1980."

Based upon the record, including the depositions, answers to interrogatories and admissions, G.E. moved for summary judgment on the ground that notice of defects was not given to it within the one-year warranty period. Mountain-Aire opposed the motion on the grounds, inter alia, that it gave notice to Master within the warranty period, that Master was G.E.'s agent and that, in any event, G.E. had waived the notice provision by its post-warranty assurances to Mountain-Aire.

The trial court awarded G.E. summary judgment and $12,000 for attorney's fees.

Mountain-Aire moved for a new trial, reasserting the contention that notice to Master constituted notice to G.E.

The trial court granted the motion for new trial on the ground that there was still a fact question as to whether or not Mountain-Aire gave sufficient notice to G.E. of the claimed breach of express warranty within the time required by the contract.

The entire dispute in this case resolves itself into this: What evidence was there before the trial court on the motion for summary judgment that Mountain-Aire, within the warranty period, notified G.E., through its alleged agent Master, that the equipment it purchased was defective? Mountain-Aire contended that a letter it sent to Master on May 21, 1980, which letter was attached to its opposition to the motion for summary judgment, constituted sufficient notice. The letter states in part:

"Please be advised that we wish to terminate our repeater services and all other services that your organization has to do with our company.

The so-called 'Portable Phones' are so useless that there is no possible way that we could have ever discontinued the use of the GCS answering service. The overall coverage and communication ability that this system provides is unacceptable.

I am sorry that it has come to this. Perhaps we should have been a more constant complainer. Now it has come to a matter of economics. For what we are paying for repeater site, rent, and equipment maintenance we feel that we can reimburse servicemen for their telephone calls for less money.

So far this has been very costly and I feel that it is going to cost me a great deal more before this is over, and we still won't have radio communications."

The Uniform Commercial Code as well as the contract requires notice of breach of contract after goods have been accepted. A.R.S. § 44-2370(C)(1), which was the governing provision of the U.C.C. at the time of this transaction, provides that the buyer must, within a reasonable time after he discovers or should have discovered any breach, notify the seller of the breach or be barred from any remedy.[1] In J. White and R. Summers, Uniform Commercial Code (2nd ed. 1980) the authors comment on the sufficiency of the notice required:

"Finally, what constitutes sufficient notice under 2–607(3)(a)? How explicit must it be? May it be oral? Must it threaten litigation? Quite clearly the drafters intended a loose test; a scribbled note on a bit of toilet paper will do:

'The content of the notification need merely be sufficient to let the seller know that the transaction is still troublesome and must be watched. There is no reason to require that the notification which saves the buyer's rights under this section must include a clear statement of all the objections that will

---

1. The pertinent provision of Arizona's present Uniform Commercial Code is A.R.S. § 47- 2607(C)(1). Added Laws 1984 Ch. 77, sec. 3.

be relied on by the buyer, as under the section covering statements of defects upon rejection (Section 2–605). Nor is there reason for requiring the notification to be a claim for damages or of any threatened litigation or other resort to a remedy. The notification which saves the buyer's rights under this Article need only be such as informs the seller that the transaction is claimed to involve a breach, and thus opens the way for normal settlement through negotiation.'

Under this comment, it is difficult to conceive of words which, if put in writing, would not satisfy the notice requirement of 2–607. Indeed, a letter containing anything but the most exaggerated encomiums would seem to tell that the transaction 'is still troublesome and must be watched.'" J. White and R. Summers, supra, at 425.

It is clear that the letter seems to tell that the transaction "is still troublesome and must be watched" and certainly would convey to a reasonable mind that there had been a breach of contract.

 G.E. contends that the letter is insufficient notice because Master was acting in a dual capacity—as a franchisee and authorized service station, and on its own under its separate repair contract and under its lease of the repeater site. Thus, G.E. argues, if the letter indicates something was still "troublesome" it was only "troublesome" in relation to Master's capacity under the separate repair contract and lease. Therefore, it argues that notice that the transaction was troublesome went to Master only in its separate and individual capacity. We do not agree. The purpose of requiring notice is to enable the seller to make adjustments or replacements or to suggest opportunities for cure to the end of minimizing the buyer's loss and reducing the seller's liability. White and Summers, supra, at 421. Even though Master was wearing two hats, they were on the same head, and the purpose behind the notice requirement was satisfied. Furthermore, the record shows many complaints about the system within the warranty period as well as attempts by Master to make repairs. Such complaints and repair attempts by an authorized dealer fall within the realm of proper notice and an opportunity to repair the equipment. See *Volkswagen of America, Inc. v. Harrell*, 431 So.2d 156 (Ala.1983). See also *Wilson v. Marquette, Electronics, Inc.*, 630 F.2d 575 (8th Cir.1980) (numerous instances of notice of satisfaction). Ordinarily, the sufficiency of notice is a question of fact for the jury. *Cotner v. International Harvester*, 260 Ark. 885, 545 S.W.2d 627 (Ark.1977). The trial court did not err in granting the motion for new trial.

Affirmed.

BIRDSALL, P.J., and FERNANDEZ, J., concur.