INDUSTRIAL ELECTRONIC SUPPLY, INC. *v.*
LYTLE MANUFACTURING, L.L.C.

CA 04-1351                                   226 S.W.3d 1

Court of Appeals of Arkansas
Opinion delivered February 1, 2006

*Rose Law Firm*, by: *Richard T. Donovan*, for appellant.

*Gary J. Mitchusson* and *Jennifer Hicky Collins*, for appellee.

JOHN B. ROBBINS, Judge. This is an appeal arising under the Uniform Commercial Code. The trial court, following a bench trial, awarded appellant Industrial Electronic Supply, Inc. (IES), a net judgment of $430.90 on its complaint on open account after granting appellee Lytle Manufacturing, LLC, a setoff on its counterclaim for breach of warranties. In its two points on appeal, IES argues that the trial court erred when it held that Lytle was entitled to a setoff and that the trial court erred in assessing its damages at $24,487.10. We affirm as modified.

Lytle manufactures duck decoys with motorized wings; IES supplied wiring and other electrical parts necessary to operate the decoys. IES also supplied adapters/chargers for recharging the decoy batteries overnight. These supplies were provided sporadically between April and November 2000. A dispute arose when Lytle discovered that some of the chargers/adapters were less than the 500-milliamp chargers that it had ordered. Lytle found other suppliers and refused to pay IES.

On February 8, 2001, IES filed suit on open account against Lytle, seeking to collect $36,856.30 for unpaid merchandise. Lytle answered, denying the material allegations of the complaint. Lytle also counterclaimed for damages, alleging that IES breached its warranties and was negligent because it had shipped the wrong product (100, 200, or 300 milliamps instead of 500 milliamps). The counterclaim, based on breach of warranties, sought a setoff against the sum due IES. The counterclaim did not allege that Lytle

notified IES that the chargers were defective in that they were not 500-milliamp chargers. In a late-filed response to the counterclaim, IES denied the material allegations of the counterclaim. Further, the response did not address Lytle's failure to allege notice.

In opening statements at trial, IES asked the trial court to dismiss Lytle's counterclaim because Lytle knew that it had repeatedly received the wrong sized chargers and because it failed to give notice of the problem within a reasonable time of discovering the mistake, as required by Ark. Code Ann. § 4-2-607(3). In its opening statement, Lytle did not address the issue.

Mark Sober, an outside sales representative for IES and responsible for Lytle's account, testified that Lytle owed $36,856.30 for unpaid goods. He explained that IES started by supplying Lytle with chargers but ultimately supplied other goods as well. He denied that he gave Lytle any advice on manufacturing its decoys. He stated that Lytle asked him to locate some 500-milliamp chargers and that he did so. Sober stated that he obtained some samples of various sized chargers for Lytle to evaluate prior to any orders being placed. He also admitted that IES supplied Lytle with chargers smaller than 500 milliamps because that was what Lytle ordered. He stated that most of his dealings were with Thereasa May at Lytle. He further testified that all shipments had a shipping document known as a "picking ticket" describing the contents of the shipment. He identified several picking tickets showing shipment of chargers of various sizes other than 500 milliamps. Sober admitted on cross-examination that IES could not have supplied Lytle with all of its 500-milliamp chargers in the hasty manner in which Lytle was ordering them. He also asserted that all of the chargers would have charged the same. He also testified that the first time he learned that there was a problem with the chargers not being 500 milliamps was in November 2000. Finally, Sober identified a credit memo for $12,369.20 credited to Lytle's account. However, he could not say whether this credit was reflected in the total due IES from Lytle.

Bill Lytle, the sole owner of Lytle, testified that, as he was developing his prototype, he and Mark Sober discussed whether IES could meet his supply requirements. He stated that Sober told him that IES could meet all of his supply needs. He also stated that Sober knew that he needed 500-milliamp chargers. Lytle explained that the 500-milliamp chargers were necessary for the decoy's battery to be fully recharged overnight. He stated that

Sober told him to use the 500-milliamp chargers. He also stated that there was no reason to test chargers smaller than 500 milliamps because he was under the impression that they would not work.

Lytle admitted that he signed shipping documents showing shipments of chargers of less than 500 milliamps. He also admitted that, if he had read the shipping documents closely, he could have detected as early as April 2000 that he was not receiving the proper chargers. According to Lytle, he would not have knowingly accepted chargers of less than 500 milliamps. He also denied telling Sober to ship whatever size chargers were available. Lytle testified that it never occurred to him that he was receiving chargers other than 500 milliamps.

Lytle stated that he started receiving complaints in late October 2000 from customers that the chargers were not completely recharging the decoys overnight. After learning that the problem resulted from using chargers smaller than 500 milliamps, Lytle stated he called Sober around the first week of November to inform him of the problem. He testified that Sober said that he would investigate the matter but that, ultimately, Sober and IES refused to correct the problem. Lytle stated that he found another supplier and detailed his efforts to remedy the problems with his customers. Lytle admitted that he had not paid for some of the supplies from IES. He also identified a credit memo for a shipment that Lytle had returned to IES. However, he was not sure whether Lytle was given the credit or not.

Thereasa May testified that she was Lytle's former office manager and oversaw the buying and selling of the decoys in 1999 and 2000. She stated that she was involved in the negotiations with IES and that IES started supplying products to Lytle. She admitted that she signed shipping documents for 200-milliamp chargers. However, she stated that she did not realize that they were 200-milliamp chargers, in part because the individual charger boxes were not marked. May denied telling Mark Sober to ship chargers of other sizes if IES did not have enough 500-milliamp chargers. She said that customers started complaining after duck season opened. After Lytle discovered that the problem was with the chargers, May stated that she called Sober in November 2000 about chargers that "were not mine." She stated that Sober told her that he would look into the matter but that he ultimately told her that she had accepted the goods. She also detailed Lytle's replacement of decoys with various retailers. May also denied ever ordering any chargers less than 500 milliamps.

In its letter opinion, the trial court found that Lytle owed IES $36,856.30 for unpaid merchandise but that Lytle was not given a credit of $12,369.20 for returned goods. This resulted in a net amount of $24,487.10 owed to IES. The trial court also found that the chargers that IES sold to Lytle were nonconforming and that Lytle was required to replace the chargers. The trial court further found that Lytle was entitled to recover $24,056.20 in damages for having to replace the decoys with the improper chargers. This resulted in a net judgment in favor of IES in the sum of $430.90. The trial court also ordered each party to be responsible for its own attorney's fees. Judgment was entered accordingly, and this appeal followed.

In bench trials, the standard of review is not whether there is any substantial evidence to support the finding of the court but whether the judge's findings were clearly erroneous or clearly against the preponderance of the evidence. *Reding v. Wagner*, 350 Ark. 322, 86 S.W.3d 386 (2002). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a firm conviction that a mistake has been made. *Chavers v. EPSCO, Inc.*, 352 Ark. 65, 98 S.W.3d 520 (2003). However, a trial court's conclusion on a question of law is reviewed *de novo* and is given no deference on appeal. *Murphy v. City of West Memphis*, 352 Ark. 315, 101 S.W.3d 221 (2003).

In its first point, IES argues that the trial court erred when it gave Lytle a setoff because Lytle failed to notify IES of the goods being defective, as required by Ark. Code Ann. § 4-2-607(3)(a) (Repl. 2001), and because Lytle knowingly ordered chargers other than 500 milliamps. We affirm the trial court on this point, holding that this issue was tried by consent of the parties. This result is consistent with cases from other jurisdictions holding that the issue of the seller's failure to properly plead notice is waived unless pled with specificity. *See Faucette v. Lucky Stores, Inc.*, 33 Cal. Rptr. 215 (Cal. App. 1963); *Rich's Rest., Inc. v. McFann Enters., Inc.*, 570 P.2d 1305 (Colo. App. 1977); *Thompson Farms, Inc. v. Corno Feed Prods.*, 366 N.E.2d 3 (Ind. App. 1977). We further hold that the trial court's finding that the chargers were nonconforming is not clearly erroneous.

Arkansas's version of the Uniform Commercial Code provides that a "buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." Ark. Code Ann. § 4-2-607(3)(a)

(Repl. 2001).[1] Our courts have held that the giving of reasonable notice is a condition precedent to recovery under the provisions of the commercial code. *Williams v. Mozark Fire Extinguisher Co.*, 318 Ark. 792, 888 S.W.2d 303 (1994); *L.A. Green Seed Co. v. Williams*, 246 Ark. 463, 438 S.W.2d 717 (1969); *Adams v. Wacaster Oil Co., Inc.*, 81 Ark. App. 150, 98 S.W.3d 832 (2003). Only when the buyer has given notification as required in section 4-2-607(3)(a) may he recover damages for any loss resulting from his seller's breach. Ark. Code Ann. § 4-2-714(1) (Repl. 2001); *Adams, supra.*

■ In the present case, Lytle did not specifically allege in its counterclaim that notice was given. Lytle also does not argue on appeal that it pled that notice was given to IES; rather, Lytle argues that notice was given. IES did not address the lack of notice in its response to the counterclaim. Instead, IES first raised the issue of lack of notice in its opening statement. IES did not further address the issue at trial. Mark Sober, the IES sales representative handling Lytle's account, testified that he received a call in November 2000 complaining about the chargers not being 500-milliamp chargers. Thereasa May testified that she called Sober in November 2000 about the chargers not being what Lytle ordered. Bill Lytle testified to the same effect. These telephone calls could be considered notice from Lytle to IES. Notice is sufficient when it informs the seller that the transaction is claimed to involve a breach and thus to open the way for negotiation of a normal settlement. *Cotner v. Int'l Harvester Co.*, 260 Ark. 885, 545 S.W.2d 627 (1977); *Greenfield Seed Co. v. Bland*, 18 Ark. App. 48, 710 S.W.2d 833 (1986). However, written notice is not required. *Smart Chevrolet Co. v. Davis*, 262 Ark. 500, 558 S.W.2d 147 (1977). The mere failure to pay for goods is not constructive notice to the seller that the buyer considers the goods defective. *Fleet Maint., Inc. v. Burke Energy Midwest Corp.*, 728 P.2d 408 (Kan. App. 1986). It must, however, be sufficient to let the seller know that the transaction is still troublesome and must be watched. *Cotner, supra; Greenfield Seed Co., supra.* Ordinarily, the sufficiency of notice is a question of fact based upon the circumstances. *Cotner, supra; L.A. Green Seed Co., supra.*

---

[1] In 2001, the uniform version of Uniform Commercial Code section 2-607(3)(a) was amended. The General Assembly has not adopted this change for Arkansas.

■ As to the trial court's finding that some of the chargers were nonconforming, we cannot say that it is clearly erroneous. Mark Sober testified that he provided Lytle with samples of various size chargers and that Lytle knowingly ordered chargers other than 500 milliamps. Bill Lytle and Thereasa May both testified that they did not order non-500 milliamp chargers nor tell Sober to "send what he had." It is within the province of the trier of fact to resolve conflicting testimony. *Lee v. Daniel*, 350 Ark. 466, 91 S.W.3d 464 (2002).

Under these facts, we cannot say that the trial court was clearly erroneous in awarding Lytle damages for breach of warranty.

■ In its second point, IES argues that the trial court erred in calculating its damages at $24,487.10. The argument is that the trial court erred in giving Lytle a credit of $12,369.20 for goods Lytle returned to IES because the credit had, in fact, already been given. We find that this point has merit.

The question of damages, both as to measure and amount, is a question of fact. *Carter v. Quick*, 263 Ark. 202, 563 S.W.2d 461 (1978); *Quality Truck Equip. Co. v. Layman*, 51 Ark. App. 195, 912 S.W.2d 18 (1995). At trial, IES introduced Exhibit 1, a summary showing that the total balance due on all of the invoices shipped to Lytle as $36,856.30. This summary lists each individual invoice and the current balance due under that invoice. Also attached to this exhibit was a credit memo for $12,369.20. IES also introduced the individual invoices. Invoice 553181, dated September 27, 2000, showed an original total due of $20,594.10. However, on Exhibit 1, the current balance listed under invoice 553181 was $8,224.90, a difference of $12,369.20, the exact amount of the credit the trial court found was not given. Therefore, we hold that the trial court was clearly erroneous and reinstate the trial court's finding that the amount owed to IES is $36,856.30. Consequently, the judgment for appellant is modified to reflect the amount of $12,800.10.

Affirmed as modified.

GLADWIN and CRABTREE, JJ., agree.