275 A.2d 262.

JOHN HANDRIGAN *vs.* APEX WARWICK, INC. *et al.*

MARCH 23, 1971.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

PAOLINO, J. The plaintiff brought this civil action to recover damages for personal injuries sustained in a fall from an aluminum ladder which had been purchased by a friend of the plaintiff from the defendant, Apex Warwick, Inc., and which was allegedly manufactured by the defendant, Griffith Ladder Company. The action against Apex was brought under the implied warranty provision of the Uniform Commercial Code, G. L. 1956, §6A-2-314, as amended by P. L. 1960, chap. 147, sec. 1. The action against Griffith sounded in tort.

The case was heard by a justice of the Superior Court sitting with a jury. At the close of plaintiff's case the trial justice granted Griffith's motion for a directed verdict, but denied a similar motion made by Apex. The case then proceeded against Apex and resulted in a verdict for plaintiff for $10,000. The matter before this court is the appeal of Apex from the refusal of the trial justice to grant its motion for a directed verdict.

The ladder which was involved in this case was an aluminum extension ladder consisting of two sections, each 10 feet long. Kenneth R. LaFountaine, a friend of plaintiff, testified that he bought the ladder from Apex in May or June 1966, in order to paint the exterior of his house; that before August 6, 1967, he had used the ladder to paint

a portion of his house; that no trouble had been experienced with the ladder; and that the first time it had been extended to its maximum length was on August 5 or 6, 1967. Mr. LaFountaine decided to paint the rear side of his house on Sunday, August 6, 1967, and plaintiff agreed to help him.

The plaintiff went to the LaFountaine house on August 6, 1967, together with his wife and their three children. When he arrived there, LaFountaine had already started to paint and was using a wooden ladder. The aluminum ladder, which had been placed against the house by LaFountaine, was fully extended.

The plaintiff testified that he first checked the base of the ladder to make certain "it was on a sound footing"; that the foot of the ladder was extended out from the house for a distance of 8 to 10 feet; that the nature of the ground at the foot of the ladder was "hardpan soil"; that he then went up the ladder to see how far he could reach in painting; and that while climbing up the ladder he had no brushes, paints, or other objects in his hand. He further testified that when he had reached a point where "the top of the ladder was chest high," when there were still three or four rungs ahead of him, he started to climb down. As he descended he had a sensation that the house was moving. He looked down to the ground and realized that the ladder was sliding to the left and he saw the ladder was bending. It continued to slide and when the ladder came apart about one-half way through the fall, he fell the remaining distance of 10 to 12 feet, landing on the cement sidewalk.

Professor Constantine Mylonas, who qualified as an expert in the field of testing metals, testified as a witness for plaintiff. He testified as to the condition of the available parts of the ladder. The ladder had been left in LaFountaine's yard during the period from May 1966 to the date of the accident, and after the accident it was moved to a

cafe owned by plaintiff. In July 1968, it was placed in the yard and remained there through the winter when it became frozen in the ice and snow and certain other parts of the ladder became broken and dented. These conditions all occurred prior to the time the expert made any tests.

Professor Mylonas did perform a tension test and a bending-strength test on the right leg of the ladder, since the left was already bent. He stated that he used only those parts of the ladder which had not been affected by the weather and the breaking and bending of parts of the ladder after the accident. Even though the professor acknowledged that under every test that could be made the ladder had met the specifications of the "U.S.A. Standard Safety Code for Portable Metal Ladders,"[1] he concluded that in his opinion the ladder was too weak to support the weight of a man weighing 175 pounds or more, and that the ladder was unsafe. The plaintiff weighed approximately 175 pounds at the time of the accident.

The defendant bases its entitlement to a directed verdict on three grounds.

I

The defendant's first ground, in support of its motion for a directed verdict, is that there was no evidence that the ladder was unfit for the use for which it was intended. As we have previously stated, the action against this defendant was brought under §6A-2-314 of the Uniform Commercial Code.[2]

---

[1]The U.S.A. Standard Safety Code is sponsored by the American Ladder Institute, American Society for Safety Engineers, and National Association of Mutual Casualty Companies.

[2]The pertinent portion of that section reads as follows:

"6A-2-314. Implied warranty—Merchantability—Usage of trade.— (1) Unless excluded or modified (§6A-2-316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind.

In arguing that there is no evidence that the ladder was unfit for the use for which it was intended, defendant points to the ruling of the trial justice granting the motion of Griffith Ladder Company for a directed verdict on the ground that there was no evidence the material used in making the ladder was defective or that it was negligently manufactured. Inferentially, defendant argues that those findings support his argument here. We do not agree.

We are reviewing the trial justice's action denying defendant's motion for a directed verdict. In passing on such a motion the trial justice was required to view the evidence in a light most favorable to plaintiff, and to draw therefrom all legitimate reasonable inferences of which it was susceptible, free from any question as to weight or credibility. *D'Agostino* v. *Yellow Cab Co.*, 105 R. I. 28, 249 A.2d 87. The fact that the ladder met all the specifications of the American Standard Safety Code does not establish as a matter of law that the ladder was fit for the ordinary purposes for which ladders are used. The expert's testimony that the ladder was "too weak" and "unsafe" raised a question of fact, and we hold that the trial justice correctly submitted the case to the jury so that they could determine, on all the evidence, the question of fitness under the Uniform Commercial Code.

---

"(2) Goods to be merchantable must be at least such as
"* * *

"(c) are fit for the ordinary purposes for which such goods are used * * *."

The applicable *comment* to §6A-2-314 is as follows:

"13. In an action based on breach of warranty, it is of course necessary to show not only the existence of the warranty but the fact that the warranty was broken and that the breach of the warranty was the proximate cause of the loss sustained. In such an action an affirmative showing by the seller that the loss resulted from some action or event following his own delivery of the goods can operate as a defense."

## II

The second ground argued by defendant in support of its motion for a directed verdict is that plaintiff, as a matter of law, was using the ladder in an abnormal manner and not in accordance with the United States Safety Code. The defendant relies on *Richard* v. *H. P. Hood & Sons*, 104 R. I. 267, 272, 243 A.2d 910, 913, where the court quoted the following language from Prosser, 50 Minn. L. Rev. 791, 839:

> " 'But if he [the plaintiff] discovers the defect, or knows the danger arising from it, and proceeds nevertheless deliberately to encounter it by making use of the product, his conduct is the kind of contributory negligence which overlaps assumption of risk; and on either theory his recovery is barred.' "

The defendant points to the evidence that the ladder had been used by the owner for some time without incident and that plaintiff's evidence showed that at the time of the accident the base of the ladder was 8 to 10 feet away from the house, while under the U.S.A. Standard Code for Ladders requirements, the base of the ladder should be approximately 4 feet from the house. The defendant argues, in effect, that the failure of the plaintiff to comply with the U.S.A. Standard Code for Ladders with respect to the placement of the base of the ladder constituted an abnormal use as a matter of law. We do not agree. The plaintiff's failure to comply with the recommendations of the U.S.A. Standard Code was evidence which the jury could consider in determining whether plaintiff was using the ladder in an abnormal manner, but it was not conclusive. Moreover, plaintiff's expert testified that in his opinion the placement of the base of the ladder 8 to 10 feet away from the house could not have materially influenced the behavior of the ladder, and he also gave his reasons for his opinion.

We are satisfied that on this state of the evidence the question whether plaintiff's use of the ladder was abnormal was for the jury to determine and we, therefore, hold that the trial justice did not err in refusing to grant defendant's motion on this ground.

### III

The defendant's final ground is that there was no privity between plaintiff and defendant as plaintiff did not come within the class of beneficiaries entitled to relief under the statute. We do not agree.

At the time of this accident, §6A-2-318[3] of the Uniform Commercial Code read as follows:

"6A-2-318.[4] Third party beneficiaries of warranties express or implied. — A seller's warranty whether express or implied extends to any natural person who is in the family or household of his buyer or who is a guest in his home if it is reasonable to expect that such person may use, consume or be affected by the goods and who is injured in person by breach of the warranty. A seller may not exclude or limit the operation of this section."

The evidence in this case shows that the plaintiff visited

---

[3]In 1969, §6A-2-318 was amended to read as follows:

"A seller's or a manufacturer's or a packer's warranty whether express or implied including but not limited to a warranty of merchantability provided for in §6A-2-314, extends to any person who may reasonably be expected to use, consume or be affected by the goods and who is injured by breach of the warranty. A seller or a manufacturer or a packer may not exclude or limit the operation of this section."

[4]The Comment to this section of the Code states in part:

"2. The purpose of this section is to give the buyer's family, household and guests the benefit of the same warranty which the buyer received in the contract of sale, thereby freeing any such beneficiaries from any technical rules as to 'privity.' * * * Implicit in the section is that any beneficiary of a warranty may bring a direct action for breach of warranty against the seller whose warranty extends to him.

"3. This section expressly includes as beneficiaries within its provisions the family, household, and guests of the purchaser."

the LaFountaines as a friend to help LaFountaine paint his house. He brought with him, on the Sunday on which this accident happened, his wife and three children. At the time of the accident the plaintiff's wife was in the kitchen of the LaFountaine house having coffee with Mrs. LaFountaine. In the circumstances, the plaintiff was a guest in his friend's home, and it was reasonable to expect that a guest might use the ladder. Thus, he was a beneficiary of any implied warranty applicable to the ladder, even though he was not the purchaser, and as such he had a right to bring a direct action for breach of warranty against this defendant as the seller of the ladder. See *Tomczuk* v. *Cheshire,* 26 Conn. Supp. 219, 217 A.2d 71. *Compare Henry* v. *J. W. Eshelman & Sons,* 99 R. I. 518, 209 A.2d 46, *Finocchiaro* v. *Ward Baking Co.,* 104 R. I. 5, 241 A.2d 619.

The defendant's appeal is denied and dismissed, and the judgment appealed from is affirmed.

*William J. Burke, John F. McBurney,* for plaintiff.

*Anderson & Kane, Charles H. Anderson,* for defendant.