Elizabeth THOMAS

v.

AMWAY CORPORATION.

No. 82–240–Appeal.

Supreme Court of Rhode Island.

Feb. 28, 1985.

Hugh L. Moore, Jr., Kevin M. Cain, Providence, for plaintiff.

Paul Martellino, Newport, Samuel S. Concemi, Lawrence, Mass., for defendant.

## OPINION

BEVILACQUA, Chief Justice.

This is an appeal by the plaintiff, Elizabeth Thomas, from a judgment against her on an action in negligence, strict liability, and breach of both express and implied warranties of merchantability against the defendant, Amway Corporation. The case was tried before a justice of the Superior Court and a jury. At the close of the plaintiff's case, the defendant moved for a directed verdict, which was granted by the trial justice on all counts, and the plaintiff now appeals this decision. The facts of this case are as follows.

In September of 1976, plaintiff purchased from defendant a bottle of liquid soap commercially identified as Nature Shower. Shortly after showering and using the soap, plaintiff's skin became irritated and inflamed and red blotches developed over a large portion of her body. The red blotches would often bleed, causing plaintiff's clothes and bed sheets to stick to her body.

The plaintiff informed defendant by telephone on October 30, 1976, and again on November 15, 1976, that upon using the soap, she had suffered a severe skin rash and had experienced severe itching and discomfort. The defendant responded by letter on November 12, 1976, in which communication defendant indicated that it had received complaints from several buyers of an occasional, unusual, or unexpected reaction to the soap. The defendant also requested that plaintiff complete some forms and send a sample of the soap that plaintiff had purchased. The plaintiff complied with both requests. The trial justice refused to admit this letter into evidence.

The plaintiff's skin remained inflamed for over a year, during which time she was treated by three different doctors. The itching was usually so intense that plaintiff

would often be forced to leave work early. When the red blotches finally did clear up in August of 1978, they left marks all over her body. The plaintiff died on May 28, 1980, from other causes.[1]

The plaintiff's daughter, Linda Greene, testified that neither her mother nor her sister, who also suffered a rash after using the soap, had had a skin condition prior to September 1976. Testimony was also given by John Hopf, a commercial photographer who took several photographs of the plaintiff in November 1976 and who testified to the circumstances surrounding the taking of the photographs and identified the same. The trial justice refused, however, to admit into evidence defendant's answers to plaintiff's interrogatories numbered 40, 41, and 44, which listed the names of individuals who had filed complaints with defendant after they had sustained injuries as a result of using the soap.

■ On an appeal from the trial justice's decision on a motion for a directed verdict, we must look at the evidence, as does the trial justice, in the light most favorable to the adverse party. We are obliged to give such party the benefit of all legitimate inferences that may be properly drawn therefrom without sifting or weighing evidence or exercising independent judgment concerning the credibility of the witnesses. If issues upon which reasonable persons might draw conflicting conclusions exist, we must overturn the trial justice's decision. *Gormley v. Vartian*, 121 R.I. 770, 780, 403 A.2d 256, 261 (1979); *Plouffe v. Goodyear Tire & Rubber Co.*, 118 R.I. 288, 294-95, 373 A.2d 492, 495-96 (1977). Keeping this standard in mind, we shall address the issues in the case at bar.

### I

### Breach of Implied Warranty of Merchantability

■ The plaintiff's allegation of a breach of implied warranty is premised on G.L.

---

**1.** The administrator of the estate of Elizabeth Thomas was substituted as party plaintiff in this    action.

1956 (1969 Reenactment) § 6A–2–314,[2] which discusses the merchantability of goods. A review of the evidence fails to demonstrate any negation of the requirements of merchantability by defendant, Amway. This implied warranty is breached when a product of fair average quality does not pass in the trade and is unfit for the ordinary purpose for which it is used, which in this case was the cleansing of the body. *Handrigan v. Apex Warwick, Inc.*, 108 R.I. 319, 322–23, 275 A.2d 262, 264–65 (1971); *Bosway Tube & Steel Corp. v. McKay Machine Co.*, 65 Mich.App. 426, 431, 237 N.W.2d 488, 490 (1975); § 6A–2–314.

The plaintiff did not present any evidence from which a jury reasonably could have inferred that Nature Shower was a liquid soap that would not pass without objection in the trade. Nor did plaintiff offer proof to show that Nature Shower was not of fair average quality or fit for the ordinary purpose of cleaning. The plaintiff has merely proven the happening of an occurrence; she demonstrates that she developed a skin condition following the use of Nature Shower in September

1976 but has not proved the causal nexus between the happening of the occurrence and the alleged breach of the implied warranty of merchantability. The plaintiff is not bound to exclude every other possible cause of her condition but she is required to show that the probable cause was the soap. *Benavides v. Stop & Shop, Inc.*, 346 Mass. 154, 156–58, 190 N.E.2d 894, 896–97 (1963); *see also San Antonio v. Warwick Club Ginger Ale Co.*, 104 R.I. 700, 709–10, 248 A.2d 778, 783 (1968). Because we find that the evidence does not establish beyond conjecture that the soap was deleterious and that the ailment of which plaintiff complains was due to the soap rather than to many other factors that could have caused the rash, we affirm the directed verdict in regard to the implied warranty count.

## II

### Breach of an Express Warranty

General Laws 1956 (1969 Reenactment) § 6A–2–313 sets forth the necessary requisites of proof in order to prevail on a claim for a breach of an express warranty by affirmation or promise.[3] The plaintiff con-

---

**2.** General Laws 1956 (1969 Reenactment) § 6A–2–314 provides:

"Implied warranty—Merchantability—Usage of trade.—
(1) Unless excluded or modified (§ 6A–2–316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. Under this section the serving for value of food or drink to be consumed either on the premises or elsewhere is a sale.
(2) Goods to be merchantable must be at least such as
(a) pass without objection in the trade under the contract description; and
(b) in the case of fungible goods, are of fair average quality within the description; and
(c) are fit for the ordinary purposes for which such goods are used; and
(d) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and
(e) are adequately contained, packaged, and labeled as the agreement may require; and
(f) conform to the promises or affirmations of fact made on the container or label if any.

(3) Unless excluded or modified (§ 6A–2–316) other implied warranties may arise from course of dealing or usage of trade."

**3.** Section 6A–2–313 provides:

"Express warranties by affirmation, promise, description, sample.
(1) Express warranties by the seller are created as follows:
(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.
(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.
(c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.
(2) It is not necessary to the creation of an express warranty that the seller use formal words such as 'warrant' or 'guarantee' or that he have a specific intention to make a warranty, but an affirmation merely of the value of the

tends that the label on Nature Shower expressly warranted that its use "leaves skin feeling silky clean * * * Gentle for all uses" and that "everyone in the family will enjoy the convenience of this versatile body cleanser for bathing, showering and hand-washing." The plaintiff asserts that this express warranty was breached because she suffered a rash after using this product.

■ Although the trial justice's assertion that "it [Nature Shower] can be gentle but result in a rash" is inherently contradictory, especially when read in conjunction with the "for all uses" language,[4] he was correct in directing a verdict on defendant's behalf with respect to this issue. The plaintiff who claims breach of express warranty has the burden of proving that the statements or representations made by the seller induced her to purchase that product and that she relied upon such statements or representations. *Rogers v. Zielinski*, 99 R.I. 599, 603–04, 209 A.2d 706, 708 (1965) (this case was decided under § 6–3–12, which was recodified in 1969 as § 6A–2–313); *Alan Wood Steel Co. v. Capital Equipment Enterprises, Inc.*, 39 Ill.App.3d 48, 53–55, 349 N.E.2d 627, 632–33 (1976). In the case at bar, defendant had not printed on the bottle that the product would not produce a rash, thus plaintiff had no representation to rely upon. As the trial justice properly noted, "[t]here is no evidence in this case that Mrs. Thomas made her bargain on anything contained on the container." Without this evidence, we affirm the trial justice's decision that plaintiff cannot recover for breach of express warranty.

### III

### Interrogatories

Before considering plaintiff's counts for negligence and strict liability in tort, we must determine whether or not the trial justice erred in not allowing into evidence

goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty."

defendant's answers to plaintiff's interrogatories numbered 40, 41, and 44, which listed the names of persons who had filed complaints with defendant, either by letter or by telephone, after they had sustained injuries as a result of having used the soap. We must also determine whether the trial justice should have admitted a letter that defendant wrote to plaintiff on November 12, 1976, concerning plaintiff's unfavorable reaction to the product. The trial justice found that both the letter and the interrogatories were immaterial and irrelevant to any issue before the court.

■ Rule 33(b) of the Superior Court Rules of Civil Procedure provides that answers to interrogatories may be used to the same extent as provided in Rule 26(d) for the use of the deposition of a party. A necessary prerequisite of Rule 26(d)(2) is that the deposition or interrogatory be admissible under the rules of evidence. We have consistently held that the admission of evidence objected to as being irrelevant or immaterial is within the sound discretion of the trial justice. *Kelaghan v. Roberts*, R.I., 433 A.2d 226, 231–32 (1981). In the absence of abuse of discretion, such evidentiary rulings will not constitute a basis for reversal. *Flanzbaum v. Senco Products, Inc.*, R.I., 460 A.2d 15, 17 (1983); *Aiello Construction, Inc. v. Nationwide Tractor Trailor Training and Placement Corp.*, 122 R.I. 861, 867–68, 413 A.2d 85, 89 (1980). In the case at bar, we find that the trial justice did abuse his discretion in finding that defendant's letter and the answers to plaintiff's interrogatories were not material or relevant to any issue.

Many courts find that the existence of complaints is proper for pretrial discovery and relevant to the issue of whether the defendant had notice of the dangerous propensities of the product. *Wright v. Carter Products Inc.*, 244 F.2d 53, 59 (2nd Cir. 1957); *Cohen v. Proctor & Gamble Dis-*

4. There was no indication on the label that the product was hypoallergenic.

*tributing Co.,* 18 F.R.D. 301, 302 (D.C.Del. 1955); *Warn Industries v. Geist,* 343 So.2d 44, 46 (Fla.App.1977). In *Wright,* which involved an action for injuries from use of a deoderant manufactured by the defendant, the court found that evidence of 373 complaints in the four years from 1948 to 1951 was relevant to the defendant's actual knowledge of threat of injury to some consumers and that the plaintiffs may be entitled to the benefit of this presumption. 244 F.2d at 59. In *Warn Industries v. Geist,* 343 So.2d 44 (Fla.App.1977), a product-liability action, the court found that the trial justice did not abuse his discretion in allowing the plaintiffs to read into evidence an interrogatory and answer relating to a prior accident involving a winch manufactured by the defendant since it was relevant to the dangerous character of the instrumentality and the defendant's knowledge thereof. *Id.* at 46.

■ Evidence of other injuries is also material upon the issue of notice to the defendant of a risk inherent in the use of its product by persons of normal susceptibility and upon the resulting duty to warn. This type of evidence might be admissible to show that the injury to the plaintiff was probably caused by a harmful ingredient in the formula rather than the result of any peculiar susceptibility of that plaintiff. *Bleacher v. Bristol-Myers Co.,* 53 Del. 1, 5, 163 A.2d 526, 528 (1960); *Carter v. Yardley & Co.,* 319 Mass. 92, 94, 64 N.E.2d 693, 694–95, (1946); *Farnum v. Bristol-Myers Co.,* 107 N.H. 165, 167–68, 219 A.2d 277, 279 (1966).

■ We find, therefore, that the letter dated November 12, 1976, and interrogatories numbered 40, 41, and 44 should have been admitted. In the letter, defendant stated:

"[W]e have recently received a report that you claimed to have experienced an unpleasant or unfavorable reaction while using the following Amway product: Nature Shower. This product has been thoroughly tested and evaluated for safety. However, due to variations in each individual's metabolism and body chemistry, an occasional, unusual or unexpected reaction may occur."

This statement is relevant to whether or not defendant had knowledge of potentially dangerous propensities of the product. The answers to interrogatories numbered 40, 41, and 44, listing the names and addresses of those who had suffered injury from the use of the product as reported by letter and through a telephone system operated by defendant, are also relevant to whether defendant had notice of the possible dangerousness of the product and also whether this plaintiff was particularly sensitive.

The exclusion of this evidence, however, does not constitute reversible error because even if admitted, this evidence would not have significantly reversed a material aspect of the case. *Kelegnan v. Roberts,* 433 A.2d at 232; *Aiello Construction, Inc.,* 122 R.I. at 868, 413 A.2d at 89. Looking at this evidence in the light most favorable to the party against whom the motion is made, namely, the plaintiff, and giving her the benefit of all reasonable and legitimate inferences that may be properly drawn from it, we find that the motion for a directed verdict was properly granted. *Katz v. Prete,* R.I. 459 A.2d 81, 84 (1983).

## IV

### Negligence or Strict Liability

Even including the letter and answers to all interrogatories, sufficient evidence did not exist from which the jury could have found or reasonably inferred negligence in the design, manufacture, testing, or inspection of the liquid soap, nor was there sufficient evidence of a defect. *Ritter v. Narragansett Electric Company,* 109 R.I. 176, 283 A.2d 255 (1971). In *Ritter* we held that one can only be liable in negligence if the plaintiff has met his burden of introducing credible evidence that the defendant knew, or had reason to know, of a defective design or that he was negligent in failing to test or inspect the product prior to sale.

Furthermore, he must prove that this defect proximately caused the injury. *Id.* at 182–83, 283 A.2d at 259.

■ In a strict liability action, the plaintiff has the burden of proving a defect in the design or manufacture that makes the product unsafe for its intended use, and also that the plaintiff's injury was proximately caused by this defect. *Id.* at 190–91, 283 A.2d at 262; *see also Salk v. Alpine Ski Shop Inc.*, 115 R.I. 309, 314–15, 342 A.2d 622, 626 (1975). Introducing probative circumstantial evidence that may create inferences of fact not otherwise subject to direct proof, and which could prove the defect and the causal connection is entirely consonant with the theory of strict liability. The inferences drawn from the evidence, however, may not rely upon mere conjecture or speculation to establish essential elements of this case. *Carlson v. American Safety Equipment*, 528 F.2d 384, 386 (1st Cir.1976); *Geremia v. Benny's Inc.*, 119 R.I. 868, 872–73, 383 A.2d 1332, 1334 (1978).

■ The plaintiff in the case at bar has failed to meet her burdens of proof in both negligence and strict liability. The evidence which she presented does not sufficiently prove that the product was unreasonably dangerous and that its alleged defect caused her injury. She has merely shown that the use of the product resulted in injury, but she has not proved the necessary proximate relationship between either the defect and the injury or between the negligence and the injury. Although we do permit inferences of fact to be drawn from circumstantial evidence, we believe that to permit the jurors to infer from the circumstantial evidence in this case that there had to be something in the product that caused the injury is to permit them to engage in mere speculation.

■ For similar reasons, we also find that the trial justice was correct in granting a directed verdict on the count of failure to warn in both negligence and strict liability. In negligence, the defendant only has a duty to warn if he had reason to know about the product's dangerous propensities which caused plaintiff's injuries. *Scittarelli v. Providence Gas Co.*, R.I., 415 A.2d 1040, 1043 (1980). Under strict liability, a seller need only warn of those dangers that are reasonably foreseeable. If he does not provide such a warning, then the product is rendered defective. *Borel v. Fibreboard Paper Products Corp.*, 493 F.2d 1076, 1088–89 (5th Cir.1973); *see* Restatement (Second) *Torts* § 402(A), comment j at 353 (1965).

■ Plaintiff has not sufficiently proved that there was something in Nature Shower which caused her rash. Without more evidence establishing the foreseeability of the dangerous condition and the nexus between this condition and the injury, we find one cannot reasonably infer that defendant had a duty to warn.

### V

#### Doctrine of Res Ipsa Loquitur

■ Finally, the plaintiff asserts that the trial justice erred in granting a directed verdict on the res ipsa loquitur count. To recover under this doctrine, "[a]ll that is required that the plaintiff produce sufficient evidence from which a reasonable man could say that, on the whole, it was more likely than not that there was negligence on the part of the defendant." *Parrillo v. Giroux Co., Inc.*, R.I., 426 A.2d 1313, 1319 (1981); *see Scittarelli v. Providence Gas Co.*, 415 A.2d at 1044–46. Since the plaintiff failed to prove that this accident would not have occurred without negligence, we affirm the directed verdict in regard to this count.

The plaintiff's appeal is denied and dismissed, the judgment appealed from is affirmed, and the case is remanded to the Superior Court.