**Raymond GARDINER et al.**

v.

**Gene SCHOBEL et al.**

**No. 84–178–Appeal.**

Supreme Court of Rhode Island.

March 10, 1987.

---

John F. McBurney, Pawtucket, for plaintiffs.

Carol A. Zangari and Charles H. Anderson, Anderson Anderson & Zangari, Providence, for defendants.

## OPINION

SHEA, Justice.

This negligence case comes before us on appeal following a tragic automobile collision that claimed the life of the plaintiffs Raymond and Louise Gardiner's pregnant daughter and seriously injured their three-year-old granddaughter. This death and these injuries are not before us in this appeal—only the claims of the grandmother and grandfather, herein the plaintiffs. After a Superior Court trial a jury found the plaintiff Louise Gardiner (plaintiff) to be 80 percent negligent and one of the defendants, Gene Schobel (defendant) to be 20 percent negligent, the plaintiffs moved for a new trial on the ground that the verdict was against the weight of the evidence. The trial justice reversed the jury's apportionment of liability, determining that the defendant was 80 percent negligent and plaintiff was 20 percent negligent, and therefore granted the motion on the question of liability only unless the defendants agreed to an additur of 60 percent liability within two days. The defendants did not agree to the additur and filed this appeal. We agree with the order of the trial justice and affirm.

The relevant facts in this case are in dispute. At trial plaintiff testified that on the morning of May 16, 1977, she took her daughter and granddaughter shopping at Park Square in Woonsocket. The three then stopped for lunch at the Park Square Burger Chef and after lunch headed back to the daughter's home.

The plaintiff recalled that she was traveling westward on Route 5 (also known as Route 104) toward the intersection of Route 7, where she planned to take a left turn and to continue southward on Route 7.[1] The weather was clear, and there was

---

1. There is a slight hill or incline on Route 7 a short distance from the Route 5 intersection. Some dispute exists about the distance of the hill from the intersection. The parties estimat-

a yield sign for westbound traffic on Route 5 at the intersection. The plaintiff was aware of the sign as she had traveled on this route previously. She stated that at the time of the collision the yield sign was farther away from the intersection than it currently is situated. With regard to the moments immediately preceding the collision, plaintiff testified as follows.

"Q. Now, Mrs. Gardiner, as you approached the yield sign—

"A. Right.

"Q. What did you do in the operation of your motor vehicle?

"A. Well, I slowed down; the—you couldn't see up Route 7 from where the yield sign was.

"Q. Which direction?

"A. To the left I was.

"Q. That would be looking in the southerly direction?

"A. Right. So I rolled several feet ahead and then stopped where I could see, and then I looked up left. There was nothing in sight. I looked right which I could see way up the road. There was nothing in sight so then I looked left again. There was still nothing so I crossed the northbound lane to the southbound lane.

"A. All right. Now, you looked twice to your left while you were in a stopped position?

"A. Right.

"Q. Did you see that truck coming from your left?

"A. There was nothing in sight.

"Q. And for the record, while you were stopped, approximately how far can you see or that is how far is it to the crest of that hill?

"A. Oh, it might be—maybe sixty, seventy feet. I'm not sure, you know, I'm just estimating.

"Q. And after you looked both ways, what did you then do?

"A. I crossed the northbound lane and went into the southbound lane.

"Q. And approximately what speed were you at in crossing that highway?

"A. Oh, fifteen miles an hour, you know, fifteen, twenty. I was just starting up. I mean it wasn't speeding, that's for sure."

The plaintiff further testified that she believed defendant was driving between forty and fifty miles per hour and that there were only a few seconds from the time she saw defendant come over the hill to the time of impact. She claims that at the time of the collision, she was over the center line of Route 7 and had completed her turn into the southbound lane.

Inconsistencies between plaintiff's testimony and her answers to defendants' interrogatories were revealed on cross-examination. For example, in response to one of defendants interrogatories, plaintiff said that she "slowed down to almost a complete stop" and in testimony she said she had completely stopped. The plaintiff explained that she meant that she almost stopped at the yield sign and did stop at the intersection.

As another example, plaintiff asserted in her answers that she looked "left and then right. Nothing was in sight so I proceeded into the intersection." However, in her testimony she claimed that she looked left, then right, then left again before proceeding. The plaintiff later explained that although she didn't so indicate in her answers, she naturally had to look left again in order to turn left.

The defendant gave a different version of the collision. He testified that he was driving a six-wheeled GMC dumptruck northward on Route 7. He was familiar with the intersection and knew that the speed limit was thirty-five miles per hour. The defendant claimed that he was traveling thirty-five to forty miles per hour immediately prior to the collision. As he went over the crest of the hill on Route 7, defendant saw plaintiff's vehicle about 500 feet in front of him at the intersection. He was aware that there was a yield sign at the intersection. The defendant claims that he swung his truck to the left when he "realized she wasn't stopping."

ed the distance to be between sixty and a few hundred feet.

The defendant admitted that he did not recall applying his brakes or slowing down at all before the moment of impact because, as he put it, "there was no reason for me to." He further testified that he "may have" applied his brakes but didn't "remember doing it."

The plaintiffs' counsel and defendant also had an extended discussion about precisely which lane of travel defendant was in immediately prior to the collision. In his deposition defendant explained, "From what I remember, when we hit, all of my truck would have been in the southbound lane." However, during trial, defendant claimed that although he was actually traveling in the northbound lane, some of his truck may have been in the southbound lane since he had swerved left to avoid plaintiff's vehicle.

Some confusion also existed over what defendant saw just prior to the collision. The defendant testified that when he first saw plaintiff's car, it was "down by the yield sign" and "moving slowly." The defendant explained that while proceeding down the hill, he saw plaintiff's vehicle out of the corner of his eye and that at no time did he completely lose sight of the intersection of Routes 5 and 7. In his deposition, however, defendant asserted that after he initially saw plaintiff's car, he directed his attention back to Route 7 and did not have his attention on the car again until just before the impact.

Several of defendant's prior traffic violations were introduced into evidence on the issue of credibility only. These violations included speeding, driving with an expired license, driving an unregistered vehicle, and driving a "slow moving vehicle" without the required "S.M.V." sticker. The record reveals that numerous photographs of the scene and the vehicles were introduced and that the jury took a view of the site.

The jury returned a verdict finding plaintiff to be 80 percent negligent and defendants to be 20 percent negligent. The jury assessed damages at $6,858 and accordingly awarded plaintiffs a total of $2,331.72, which included interest. The plaintiffs moved for a new trial on the ground that the verdict was against the weight of the evidence. The trial justice agreed, determining that defendant was 80 percent negligent and plaintiff was 20 percent negligent and therefore granted the motion unless defendants agreed to an additur of 60 percent liability within two days. The defendants did not agree to the additur and filed this appeal on October 17, 1983.

On appeal plaintiffs argue that the trial justice correctly granted the new-trial motion because the jury verdict was clearly against the weight of the evidence.

The defendants contend that the trial justice should not have substituted his own judgment for that of the jury in this case because there is ample credible evidence to support the jury's finding. They charge that the trial justice erroneously acted out of sympathy for plaintiffs.

■ Our review of the record below and the decision of the trial justice on the motion for a new trial reveals that his findings were adequately supported by the evidence. It is well settled that a trial justice is free to reject testimony that is contradicted, impeached, abrogated by other positive testimony, inherently improbable, or contradicted when viewed in connection with other circumstances if he or she is satisfied of its falsity. *Gibbs Oil Co. v. Potter*, 471 A.2d 207, 210 (R.I.1984). In the present case, it is clear that the evidence presented conflicted. Based on plaintiff's testimony and the police diagrams and photos admitted at trial, the trial justice's belief was that plaintiff and defendant met in a head-on collision at which time plaintiff was in her proper lane, namely, the southbound lane of Route 7. The trial justice also emphasized that since defendant testified that he "was able to see the intersection of routes 7 and 5, oh, 50 to 200 feet back from the hill," defendant should have seen plaintiff's car. Finally, the trial justice found that since defendant acknowledged that it was 100 to 150 feet from the crest of the hill to the point of impact, defendant had sufficient time to apply his brakes or sound his horn but did neither. The trial justice was free to make

each of these findings by drawing proper inferences from the existing record. *Gibbs Oil Co.*, 471 A.2d at 210. In our opinion these findings do not in any way indicate that the trial justice misconceived or overlooked material evidence.

The trial justice correctly reviewed the jury verdict in light of the well-settled standard for ruling on a motion for a new trial set forth in *Barbato v. Epstein*, 97 R.I. 191, 193–94, 196 A.2d 836, 837 (1964). This court's decision in *Barbato* directs the trial justice to assume the role of a seventh or superjuror and to consider, in the exercise of his independent judgment, all of the material evidence in the case in the light of his charge to the jury and to pass on its weight and the credibility of witnesses. The trial justice should allow the verdict to stand if the evidence is evenly balanced or is such that different minds could fairly come to different conclusions. Alternatively, the verdict should be set aside when, in the court's judgment, it is clearly wrong because it fails to respond truly to the merits of the controversy and to administer substantial justice and is against the fair weight of the evidence.

"The trial justice here was well within the bounds of his authority when he reassessed credibility and issues of fact after entrusting these functions to the jury." *Cotrona v. Johnson & Wales College*, 501 A.2d 728, 732 (R.I.1985). Although it is true that credibility and factfinding and determinations of liability and damages are clearly matters within the province of the jury, a trial justice may set aside a jury's finding in these matters if, upon his independent examination of all the material evidence in light of his charge to the jury, he determines that the jury verdict fails to respond truly to the merits of the controversy and to administer substantial justice and is against the fair preponderance of the evidence. *Id.* at 733; *Yammerino v. Cranston Tennis Club, Inc.*, 416 A.2d 698, 699–700 (R.I.1980).

Relying upon his independent review of the evidence, the trial justice found that the jury verdict was against the fair preponderance of the evidence. He determined that defendant was 80 percent negligent and plaintiff was 20 percent negligent and therefore granted the motion unless defendants agreed to an additur of 60 percent liability within two days.

When this court reviews a trial justice's decision on a motion for a new trial, we pay great deference to the findings made and shall not disturb such findings unless it appears that the trial justice has overlooked or misconceived material evidence or is otherwise clearly wrong. *Kwarciak v. Star Market*, 506 A.2d 545, 547 (R.I. 1986). We conclude on this record that the findings and conclusions are not clearly wrong and accordingly we affirm.

With regard to the trial justice's reversal of the jury's apportionment of liability, this court has specifically approved the use of remittiturs and additurs "not only to reassess an erroneous damage award but also to correct a jury's misapportionment of liability as it may relate to comparative negligence." *Cotrona*, 501 A.2d at 734. The use of these techniques "will afford trial justices a means of avoiding unnecessary relitigation of the same issues and will afford litigants just and speedier resolutions * * *." *Id.*

In this case the trial justice utilized an additur to cure what he found to be an erroneous jury determination of the quantum of liability of each set of litigants. He reversed the jury's determination of liability because, in his experienced judgment, the verdict "fail[ed] to respond truly to the merits of the controversy and to administer substantial justice and [was] against the fair preponderance of the evidence." *Yammerino*, 416 A.2d at 700–01 (quoting *Barbato v. Epstein*, 97 R.I. at 194, 196 A.2d at 837).

The trial justice concluded that the jury's determination did not administer substantial justice because the jury perceived that the plaintiff was primarily at fault whereas the trial justice found the evidence clearly placed liability more heavily on the defendant. He concluded, after assessing all relevant testimony and the demeanor of the witnesses, that this was not a fact upon

which "different minds can naturally and fairly come to different conclusions thereon." *Barbato*, 97 R.I. at 194, 196 A.2d at 837. Contrary to the defendants' claims, the trial justice also set forth specific reasons for his decision that enabled this court to conclude that his findings were indeed warranted by the record before us.

Accordingly, the defendants' appeal is denied and dismissed, the judgment appealed from is affirmed, and the papers of this case are remanded to the Superior Court. The defendants must, within thirty days of the date of this opinion, indicate an acceptance of the additur; otherwise, a new trial on the issue of liability only is ordered.