**Edward LARIVIERE**

v.

**DAYTON SAFETY LADDER COMPANY.**

**No. 85–4 Appeal.**

Supreme Court of Rhode Island.

May 15, 1987.

James J. McKenna, Providence, for plaintiff.

Lauren E. Jones, Jones & Aisenberg, Guy J. Wells, Providence, for defendant.

OPINION

SHEA, Justice.

This case comes before us following a Superior Court jury trial in which verdicts were entered for the plaintiff. The defendant Dayton Safety Ladder Company (defendant) moved for a directed verdict and for a new trial. The defendant also moved that portions of plaintiff's closing argument be stricken from the record. The

1. Because we find that expert testimony of direct evidence of a defect in the ladder raised a question of fact for the jury to decide, we do not reach the issue of whether sufficient circumstantial evidence existed in this case to place the

defendant appeals from the trial justice's denial of all three motions. We affirm in part and reverse in part.

On January 3, 1980, Edward Lariviere (plaintiff) filed a complaint which alleged that on January 3, 1978, he was using a wooden stepladder in his work as an ironworker on a construction site. He further alleged that the ladder broke while he was using it and that he fell and suffered injuries as a result. The plaintiff brought suit against Ackerman-Chacco, the retail seller of the ladder; Hughes-Bechtel, the owner of the ladder who had supplied it for general use at the construction site; and Dayton Safety Ladder Company, the manufacturer of the ladder. This appeal involves only defendant Dayton Safety Ladder Company.

In his suit against defendant, plaintiff advances four theories of liability: (1) negligent design, manufacture, and testing of the ladder, (2) strict liability, (3) breach of the warranties of merchantability and fitness for a particular purpose, and (4) liability under the doctrine of *res ipsa loquitur*. [1]

At trial plaintiff testified that at the time of his injury he was a fifty-one-year-old union ironworker employed by Muth Brothers, Inc., which was a subcontractor on a job at the Corning Glass Corporation in Central Falls. The plaintiff had been an ironworker for twenty-five years. On January 3, 1978 he took a six-foot stepladder that was leaning against a wall in his work area and placed it where he was to be working overhead. The ladder appeared "new", and plaintiff "didn't see any marks on it." He did not inspect the ladder when he first picked it up. He locked the clips on the side of the stepladder to secure it. He then stepped on the ladder with his right foot to see whether the ladder was stable and whether the concrete on which it stood was level. The ladder remained steady and plaintiff, who weighed between 240 and 250 pounds, began to climb the

matter before the jury under the theory of *res ipsa loquitur* as pleaded in plaintiff's complaint. For a discussion of the doctrine of *res ipsa loquitur, see generally Parrillo v. Giroux Co.,* 426 A.2d 1313 (R.I.1981).

ladder. His hands were free, and he was wearing a "boltbag" that weighed between one and one and a half pounds. The plaintiff climbed the ladder to the third step and stood with both feet evenly placed. As he moved his hands above his head to work the ladder collapsed. The plaintiff fell down on his right heel and then backward onto the cement. Several coworkers came to his aid and he heard one say that the ladder had broken. The plaintiff was then taken to Pawtucket Memorial Hospital where he was treated for a fractured heel bone.

After plaintiff was taken to the hospital, a coworker retrieved the ladder from the construction site and placed it in his cellar, where it remained for approximately a year and a half. The coworker then gave the ladder to Thomas Hunt, an attorney then representing plaintiff in his personal-injury action, who put it in a storage room in his office in Boston, Massachusetts. Photographs were taken of the ladder while it was in the storage room. According to Mr. Hunt, the ladder disappeared after a fire in his building on July 13, 1979.

At trial plaintiff called Dr. Bernard Lement, a materials-engineering consultant, who testified that his investigation of the cause of the failure of the ladder was based on an examination of the photographs of the ladder rather than the ladder itself. His examination disclosed that a break in the ladder occurred in the lower part of the right leg. He testified that it was his opinion, based upon a reasonable degree of scientific certainty, that the probable cause of the failure of the ladder was improper manufacture, specifically in terms of weakness in the wood at the junction of the first step where it was joined to the right rail. He stated that the cross-grain in the wood had caused the weakness and that the slope in the grain in the area of the break did not meet Occupational Safety and Health Administration (OSHA) standards [2]. He also explained in greater detail the nature of the weakness in the wood that formed the right leg of the ladder:

"Well, the weakness comes about, first of all, because your wood has different properties in different directions, and its maximum properties are obtained if the cross-grain, these layers, are parallel to the edge of the product that you are making, in this case, the rail. As you deviate, you get a decrease in strength because now the light layers, which are spring wood and low density component of the wood, have a greater effect on the strength, so that the more you increase the slope, the greater the weakness, because the spring wood, the low density component of the wood, becomes more active in resisting fracture."

Doctor Lement further observed that the groove cut into the right leg to accommodate the step as well as the hole used to insert a clamp that was put in to join the step to the right rail were "factors [that] tend[ed] to weaken the rail at that point, but in addition you have a very weak rail to begin with because of the condition of the wood."

On cross-examination defense counsel suggested that Dr. Lement's version of plaintiff's fall required the ladder to tip before the fracture occurred. Furthermore, if plaintiff in fact stood still on the ladder, the ladder legs would have bent outward rather than inward as the photos admitted at trial appeared to indicate.

Defense counsel also attacked Dr. Lement's testimony that the cross-grain in the ladder violated the American National Standards Institute (ANSI) cross-grain standard. Upon cross-examination the witness agreed that the ANSI standard he had noted on direct examination in fact referred to diagonal grain and spiral grain. He acknowledged that "[t]o be perfectly rigid, to meet the rigid requirement of that spec [the ANSI standard with respect to cross-grain], you are correct, you would have to know whether the [wood] surface was a radial surface or a tangential surface." Doctor Lement then conceded that he could not state whether the condition in the grain

---

**2.** Doctor Lement also testified that the American National Standards Institute provided additional industry standards for the strength and grain of wood but that these standards were "essentially the same with respect to cross-grain."

shown in the photographs violated the ANSI standard against cross-grain because he did not know whether he was looking at a radial or at a tangential surface when he conducted his examination of the photographs.

The plaintiff rested at the conclusion of Dr. Lement's testimony, at which time defendant moved unsuccessfully for a directed verdict. The defendant then presented its case.

The defendant's experts stated that the ladder as pictured did not violate any existing standards. Furthermore, one defense expert asserted that the fracture probably occurred when the plaintiff lost his balance and struck the ladder in the course of his fall to the ground. He also discounted any weakening effect that the clamp driven into the wood might have had.

After defendant presented its case, defendant moved to strike Dr. Lement's testimony about a defective condition in the wood from which the ladder was manufactured and Dr. Lement's reference to the weakness in the wood caused by a clamp's having been driven into the ladder rail near the fracture site. Both motions were denied.

The defendant also made a motion for a directed verdict at the close of the evidence. The trial justice reserved his ruling until after the jury's verdict.

The jury deliberated just over one day and returned with its responses to the special interrogatories. The jury found that defendant was guilty of negligence that proximately caused plaintiff's injuries. However, the jury also found plaintiff guilty of comparative negligence and apportioned 75 percent to plaintiff and 25 percent to defendant. The jury determined plaintiff's damages to amount to $315,000, which reduced by plaintiff's 75 percent negligence, resulted in an award of $78,750.

In response to the second set of interrogatories entitled "Theory of Strict Liability," the jury foreman stated: "I didn't fill them all out. I thought we would pick out the one I thought was most applicable." Instructed to continue its deliberations, the jury returned to the courtroom approximately ten minutes later and found defendant strictly liable to plaintiff for the manufacture of a defective ladder but again reduced the total award of damages of $315,000 to $78,750. The jury, in response to the third and fourth set of interrogatories, found that defendant had breached its implied warranty of merchantability and breached its implied warranty of fitness for a particular purpose. The total award of damages on each warranty claim was $315,000 but neither was reduced by the percentage of plaintiff's negligence. At this time the trial justice denied defendant's motion for a directed verdict and later denied defendant's motion for a new trial.

On appeal defendant argues that because Dr. Lement's testimony did not establish the existence of a defect in the ladder rail, plaintiff's claim must fail for lack of proof of a defect. The defendant also claims that plaintiff failed to prove either of his warranty claims because (1) the existence of a defect, without more, does not establish breach of a warranty of fitness for a particular purpose and (2) plaintiff failed to establish sufficient notice of breach for either warranty claim. In light of those assertions, defendant asserts that the trial justice erred in his failure to grant defendant's motions for a directed verdict and a new trial.

## I

### The Directed Verdict

#### A. Existence of a Defect

When this court reviews the denial of a motion for a directed verdict, we shall "reverse the trial justice's decision only if [an] examination of the evidence and all inferences reasonably flowing therefrom, viewed in a light most favorable to the nonmoving party and without consideration of the weight of the evidence or witness credibility, reveals no evidence upon which reasonable minds could differ." *Vucci v. Meyers Brothers Parking System, Inc.*, 494 A.2d 530, 534 (R.I. 1985).

The defendant asserts that the proof of the existence of a defect was a common element of plaintiff's negligence, warranty, and products liability claims and that since plaintiff failed to establish the defect, the whole chain of claims fails. We disagree.

Although our review of the record indicates that the evidence regarding a defect conflicts greatly, we find that sufficient evidence exists to raise a question that the ladder was defective and that the defect proximately caused plaintiff's injuries. In *Thomas v. Amway Corp.*, 488 A.2d 716, 722 (R.I.1985), we held that the mere use of an allegedly defective product did not establish a causal nexus between a product and the plaintiff's injuries. Here, unlike the factual context in *Thomas*, plaintiff submitted evidence that when viewed in a light most favorable to plaintiff, could support a finding that the ladder in question was weakened because of the presence of "spring" or low-density wood. Hence, the determination of the existence of such a defect remains within the province of the jury.

In *Handrigan v. Apex Warwick, Inc.*, 108 R.I. 319, 275 A.2d 262 (1971), the plaintiff was injured as a result of a fall from an aluminum extension ladder. The plaintiff brought suit against Apex for breach of an implied warranty of merchantability and introduced expert testimony that the ladder was "too weak to support the weight of a man weighing 175 pounds or more, and that the ladder was unsafe." *Id.* at 322, 275 A.2d at 264. The testimony of the plaintiff's expert supported his allegations even though the ladder met the specifications of the applicable code. The defendant moved for a directed verdict on the ground that there was no evidence that the ladder was unfit for the use for which it was intended. The trial court denied the motion and this court affirmed, stating:

> "The fact that the ladder met all the specifications of the American Standard Safety Code does not establish as a matter of law that the ladder was fit for the ordinary purposes for which ladders are used. The expert's testimony that the ladder was "too weak" and "unsafe" raised a question of fact, and we hold

that the trial justice correctly submitted the case to the jury so that they could determine, on all the evidence, the question of fitness under the Uniform Commercial Code." 108 R.I. at 323, 275 A.2d at 265.

■■■ We agree with plaintiff that Dr. Lement's testimony raised a question of fact, as did the expert's opinion in *Handrigan*. Accordingly, to the extent that each claim required the threshold determination by the trial justice of the existence of evidence sufficient to establish the existence of a defect, we hold that he correctly submitted the case to the jury on the negligence, strict liability, and warranty claims. The credibility of the expert witnesses in this case, where expert testimony conflicted greatly, also remains a question of fact that must be resolved by the jury. *Vucci*, 494 A.2d at 534.

### B. Implied Warranty of Merchantability

The defendant argues that plaintiff failed to introduce evidence at trial on the issue of implied warranty of merchantability. In order to establish liability for breach of the implied warranty of merchantability, plaintiff must "prove that the product is defective, that it was in a defective condition at the time it left the hands of the seller, and that said defect is the proximate cause of the injury." *Plouffe v. The Goodyear Tire & Rubber Co.*, 118 R.I. 288, 294, 373 A.2d 492, 495 (1977). A product is merchantable when it is "fit for the ordinary purposes for which such goods are used." General Laws 1956 (1985 Reenactment) § 6A–2–314(2)(c). The defendant claims that no evidence was produced to relate the alleged defect in the ladder to a normal person's ordinary use. However an expert witness for the defense, Richard Verhalen, testified that "a stepladder would have been a reasonable tool to employ for the type of task being described." We find that that testimony establishes sufficient evidence from which a jury could find that the ladder at issue was not fit for ordinary purposes. Accordingly we conclude that the trial justice did not err in his denial of defendant's motion for a directed

verdict on the issue of implied warranty of merchantability.

### C. Implied Warranty of Fitness for a Particular Purpose

The defendant next asserts that plaintiff failed to introduce sufficient evidence to prove the existence of an implied warranty of fitness for a particular purpose.[3] The defendant points to the apparent absence of any evidence produced at trial to establish that the purchaser of the ladder expressed a particular use to defendant or that the purchaser relied on defendant's skill or judgment for selecting or furnishing the ladder. We agree.

An implied warranty of fitness for a particular purpose arises when the seller has reason to know the buyer's particular purpose and that the buyer is relying on the seller's skill or judgment to furnish appropriate goods and the buyer relies on the seller's skill or judgment. *Keenan v. Cherry & Webb*, 47 R.I. 125, 128, 131 A. 309, 311 (1925). This court has distinguished between an implied warranty of merchantability and an implied warranty of a fitness for a particular purpose. In *Keenan* this court discussed section 15 of the Uniform Sales Act,[4] which contained nearly identical language to our current statutes on implied warranty of fitness for a particular purpose. *Id.* at 128, 131 A. at 310–11. The plaintiff alleged breach of an implied warranty of fitness for a particular purpose with regard to a fur coat. Although the court held that the implied warranty of merchantability applied to the coat, the court went on to say that

"[m]erchantability means that the article sold shall be of the general kind described and reasonably fit for the general purpose for which it shall have been sold. The buyer's particular purpose may be equivalent to nothing more than his general purpose, or it may relate to his more specific purpose. * * * [M]erchantability and fitness for a particular purpose may not be equivalent. * * * Under the Sales Act a dealer who sells articles which ordinarily are used in but one way impliedly warrants fitness for use in that particular way unless there is evidence to the contrary. This is only a warranty of merchantability." *Keenan*, 47 R.I. at 129, 131 A. at 311; *see also Scittarelli v. Providence Gas Co.*, 415 A.2d 1040, 1046 n. 4 (R.I.1980).

■ As in *Keenan*, we find sufficient evidence for a jury to find breach of an implied warranty of merchantability. However, in this record there is no evidence that defendant had reason to know of a particular use to which the ladder would be put other than its ordinary use or that the purchaser of the ladder relied on Dayton's skill or judgment for selecting or furnishing the ladder. Therefore, we find that the trial justice erred in his denial of defendant's motion for a directed verdict on plaintiff's claim of breach of implied warranty of fitness for a particular purpose.

### D. Notice Requirement

The defendant contends that plaintiff did not comply with the requirements of § 6A–2–607(3)(a), which operates as a condition precedent to filing a breach-of-warranty claim.[5] An examination of the record dis-

---

3. General Laws 1956 (1985 Reenactment) § 6A–2–315 reads in pertinent part:
    "Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose."
4. General Laws 1909, title XXVII, ch. 261, § 15 (1) states in pertinent part:
    "Subject to the provisions of this title and of any statute in that behalf, there is no implied warranty or condition as to the quality or

fitness for any particular purpose of goods supplied under a contract to sell or a sale, except as follows:
    (1) Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be reasonably fit for such purpose."

5. Section 6A–2–607(3)(a) states:
    "The buyer must within a reasonable time after he discovers or should have discovered

closes that plaintiff's counsel sent a letter to defendant on February 3, 1978—one month after plaintiff's injury—advising defendant that "this office has been retained by Mr. Lariviere to represent him in his claim for personal injuries * * * resulting from * * * your faulty equipment." Here defendant claims only the substance, and not the timing of the letter, constitutes insufficient notice to defendant. Specifically, defendant asserts that the letter does not identify the nature of the equipment, nor does it indicate that plaintiff was injured when he fell from a ladder.

■ Initially we note that the question of the sufficiency and reasonableness of time of plaintiff's notice ordinarily are questions of fact for the jury. *San Antonio v. Warwick Club Ginger Ale Co.*, 104 R.I. 700, 707, 248 A.2d 778, 782 (1968). However, this court has acknowledged that in situations in which the facts are undisputed and but one inference can be drawn by reasonable persons, the question becomes one for the court. *Id.* at 708 n. 2, 248 A.2d at 782 n. 2.

The official code comment to § 6A–2–607 states that the content of the notice need merely be sufficient to let the seller know that a claim has arisen because of a transaction that involves him. 1958 Comment to Uniform Commercial Code, comment 4, following § 6A–2–607. The commentary further states that all that is required of the notice is that it "let the seller know that the transaction is still troublesome and must be watched * * * [and] need only be such as informs the seller that the transaction is claimed to involve a breach." *Id.*

Here defendant asserts that because the notice letter does not identify the nature of the equipment or indicate that plaintiff was

injured when he fell from the ladder, it is insufficient as a matter of law. We disagree.

In the present case plaintiff is not a merchant, nor is he a retail buyer. Rather, he is properly considered a "beneficiary" of the warranty. Comment 5 to § 6A–2–607 suggests that a beneficiary is required to give notice only that an injury has occurred and that the beneficiary should be held to the requirement of good faith.[6]

■ We conclude that the fact that plaintiff referred to faulty equipment rather than to a ladder is not crucial here because defendant's business is the manufacture of ladders. Although plaintiff failed to refer to "breach of warranty" in its notice letter, we are not persuaded that the absence of the phrase evidenced lack of good faith or was so misleading as to handicap defendant.

The defendant cites the case of *Cotner v. International Harvester Co.*, 260 Ark. 885, 545 S.W.2d 627, 630 (1977), wherein the court held the notice insufficient because the plaintiff had never given notice to the seller manufacturer that he claimed "breach of implied warranty or that the buyer is looking to it for compensation or reimbursement * * *." *Id.* However, that case is distinguishable from this one in an important respect. The plaintiff here advised defendant of his "claim for personal injuries" whereas Cotner never "indicate[d] that he looked to appellee to remedy the situation or pay any damages." *Id.* Accordingly we find that the trial justice properly denied defendant's motion for a directed verdict on the insufficiency-of-notice claim.

any breach notify the seller of [the] breach or be barred from any remedy."

6. Comment 5 to § 6A–2–607 states:

"Under this Article [chapter] various beneficiaries are given rights for injuries sustained by them because of the seller's breach of warranty. Such a beneficiary does not fall within the reason of the present section in regard to discovery of defects and the giving of notice within a reasonable time after acceptance, since he has nothing to do with acceptance.

However, the reason of this section does extend to requiring the beneficiary to notify the seller that an injury has occurred. What is said above, with regard to the extended time for reasonable notification from the lay consumer after the injury is also applicable here; but even a beneficiary can be properly held to the use of good faith in notifying, once he has had time to become aware of the legal situation."

## II

### Motion to Strike

After final arguments and out of the presence of the jury, defense counsel moved to strike certain comments made by plaintiff's counsel during his closing argument. Specifically defense counsel stated that

"[f]or the first time it is now claimed that the defendant violated the ANSI standards and or the OSHA standards by creating and manufacturing a product which was less dense than required by the standard."

Defense counsel also contended that "this statement is a brand-new theory never expressed before in this courtroom, upon which there is absolutely no expert evidence to support." The trial justice refused to strike the testimony but did caution the jury that "any remarks or statements made by counsel in your presence during the course of trial or in argument are not evidence and should not be considered as such by you during the course of your deliberations."

■ The defendant claims that the trial justice abused his discretion by permitting plaintiff's counsel to argue the spring-wood issue because there was no evidence in the record to support the theory. We disagree.

First, as noted above, Dr. Lement did refer to the presence of weak, low-density spring wood as a causative factor in the fracture of the ladder rail and also to an ANSI standard admitted into evidence which stated that "low-density wood shall not be used" in the manufacture of portable wood ladders.[7] Furthermore, the trial justice properly cautioned the jury that counsel's closing argument was not evidence.

## III

### Reduction of the Warranty Awards

The defendant next argues that the trial justice erred in his refusal to reduce the awards for breach of warranty by 75 percent because the jury found the plaintiff 75 percent at fault. The judgments entered reflected a reduction of the awards on the negligence and strict liability counts but did not reflect a reduction of the warranty claims.

■ The provisions of the comparative-negligence statute, G.L. 1956 (1985 Reenactment) § 9–20–4, apply to actions for personal injuries resulting from breach of warranty. *Fiske v. MacGregor*, 464 A.2d 719, 726–29 (R.I.1983). Accordingly, we hold that the trial justice erred in his refusal to reduce the warranty awards. Since we have upheld the direction of the verdict for defendant on breach of implied warranty of fitness for a particular purpose, that claim is no longer before us.

## IV

### Motion for a New Trial

Finally, we consider defendant's argument that the trial justice erred in his denial of defendant's motion for a new trial. The trial justice's duty in his consideration of a motion for a new trial is well-known and has been recently stated in *Gardiner v. Schobel*, 521 A.2d 1011 (R.I. 1987). In *Gardiner* this court noted that the trial justice must

"assume the role of a seventh or superjuror and * * * consider, in the exercise of his independent judgment, all of the material evidence in the case in the light of his charge to the jury and * * * pass on its weight and the credibility of witnesses. The trial justice should allow the verdict to stand if the evidence is evenly balanced or is such that different minds could fairly come to different conclusions. Alternatively, the verdict should be set aside when, in the court's judgment, it is clearly wrong because it fails to respond truly to the merits of the controversy and to administer substantial justice and is against the fair weight of the evidence." *Id.* at 1015; *Barbato*

---

7. The ANSI publication, Safety Requirements for Portable Wood Ladders, § 4.1.1.1 (1975) admitted into evidence as plaintiff's exhibit No. 15 states that in the manufacture of portable wood ladders "lowdensity wood shall not be used."

*v. Epstein,* 97 R.I. 191, 193–94, 196 A.2d 836, 837 (1964).

As this court stated in *Petrella v. Izzo,* 117 R.I. 459, 367 A.2d 1078 (1977), in order to perform fully his or her duties on a motion for a new trial, the trial justice

> "need not exhaustively analyze the evidence or state all his conclusions on its weight or the witnesses' credibility. He should, however, at least sufficiently refer to what prompted his action to enable a reviewing court to ascertain whether his interference with the verdict was soundly premised or was instead based upon a misconception or oversight of material evidence or was otherwise clearly wrong." *Id.* at 462, 367 A.2d at 1080.

■ The decision of the trial justice who properly memorializes the support for his or her conclusions will be accorded great weight; it will only be reversed in a situation in which the trial justice overlooked or misconceived material evidence or was otherwise clearly wrong. *Gardiner,* 521 A.2d at 1015. However, an improperly supported decision is deprived of the weight it is normally accorded. *Marcinko v. D'Antuono,* 104 R.I. 172, 187, 243 A.2d 104, 112 (1968).

In this case the trial justice did not conduct an independent evaluation as required under the well-settled standard for a motion for a new trial. After counsels' arguments he merely stated, "Because I lean toward what the plaintiff's attorney has said in his summing up * * * I'm going to deny the request for a new trial."

When the trial justice fails to make an independent evaluation of the evidence, a new trial is not granted automatically. Instead, under the "appellate rule" we review the record to determine whether the evidence strongly preponderates against the jury's verdict. This court discussed the application of the appellate rule to a jury verdict in *Morinville v. Morinville,* 116 R.I. 507, 516, 359 A.2d 48, 54 (1976): "the jury's verdict will be sustained if *as we examine the evidence in the light most favorable to the prevailing party, there is any competent evidence which supports the verdict.*" (Emphasis in original.) We

conduct an "independent examination of the record" to make that determination. *Morgan v. DiBiase,* 121 R.I. 826, 834, 403 A.2d 1080, 1084 (1979).

■ The defendant argues that a review of the evidence in this case demonstrates that the jury's verdict is unsupported by any legally competent evidence of a defect. We disagree. We have examined the evidence in the light most favorable to plaintiff and conclude that the record reveals some evidence of a defect from which the jury could find defendant to be liable.

We agree with defendant's position that Dr. Lement's testimony with respect to an industry-standard violation in the cross-grain of the ladder wood was attacked successfully on cross-examination. Doctor Lement conceded that he could not state whether the condition in the grain shown in the photographs violated the ANSI standard against cross-grain because he did not know whether he was looking at a radial or at a tangential surface when he conducted his examination of the photographs. However, we cannot agree with defendant's assertion that "[p]laintiff's last minute, low density wood argument has been shown to have been just that, argument, not supported by the evidence in the record."

The plaintiff introduced evidence of an ANSI standard stating that "[l]ow density wood shall not be used" in the manufacture of portable wood ladders. The plaintiff's expert identified the presence of weak, low-density spring wood in the ladder rail at the fracture site. In addition, this expert identified two other causes of weakness in the wood at the fracture site: the groove cut into the right leg to accommodate the step and the hole in the leg used to accommodate the clamp that was put in to join the step to the right rail. The plaintiff's expert concluded that "all those factors tend to weaken the rail at that point, but in addition you have a very weak rail to begin with because of the condition of the wood." We have examined this evidence in the light most favorable to plaintiff and conclude that although plaintiff's expert's testimony with respect to cross-grain was at-

 

tacked successfully on cross-examination, some competent evidence of a defect still exists to support the jury's verdict.

The defendant also contends that the jury's verdict was inconsistent and evidences a compromise. Specifically, defendant claims that the jury found defendant's ladder defective but believed plaintiff to have been more at fault than defendant. The defendant asserts that according to plaintiff's version of the accident, plaintiff was not negligent whatsoever. The plaintiff simply testified that he fell when the ladder gave way. However, defendant argues that under its theory the ladder could not have broken the way it did (that is, as an inward fracture) unless it was already tipping before it broke, implying negligence on the part of plaintiff. Furthermore, defendant claims that if the ladder was already tipping, the fracture "had nothing to do with a defect but occurred because of the abuse of tipping over." We disagree.

The record does contain evidence that simultaneously could support a finding of the plaintiff's negligence and a defect in the ladder. The plaintiff gave a statement to his treating physician that he fell six to seven feet at the time of the accident. The plaintiff further admitted that a fall from such a height would have indicated that he was standing on the very top of the ladder and that it was unsafe to do so. Hence there is some evidence from which a jury could conclude that after the ladder broke as a result of a defect, the plaintiff's subsequent fall and his injuries were aggravated because of the dangerous height at which he stood on the ladder. Since our independent examination of the record discloses some evidence to support the jury's verdict, we find no error in the trial justice's denial of the defendant's motion for a new trial.

For the reasons given, it is our conclusion that a verdict should have been directed for the defendant on the claim of implied warranty of fitness for a particular purpose. Furthermore, the award for breach of implied warranty of merchantability should have been reduced to reflect the jury's determination of the plaintiff's negligence. Accordingly, we vacate that portion of the judgment entered that is inconsistent with this opinion; otherwise we affirm the judgment appealed from, and we remand for entry of an appropriate judgment consistent with this opinion.

WEISBERGER, J., did not participate.