**Marilyn CASTRIGNANO,
Plaintiff, Appellee,**

v.

**E.R. SQUIBB & SONS, INC.,
Defendant, Appellant.**

**Marilyn CASTRIGNANO,
Plaintiff, Appellant,**

v.

**E.R. SQUIBB & SONS, INC.,
Defendant, Appellee.**

**Nos. 89–1650, 89–1733 and 89–1686.**

United States Court of Appeals,
First Circuit.

April 5, 1990.

Rehearing and Rehearing En Banc
Denied May 3, 1990.

**456**

Hall R. Marston, Santa Monica, Cal., with whom Vetter & White, George Vetter, Brooks R. Magratten, Gordon P. Cleary, Providence, R.I., Dickson, Carlson & Campillo, Robert L. Dickson, Roxanne M. Wilson, Robert M. Dato, and Nancy Pack–Rayman, Santa Monica, Cal., were on brief, for E.R. Squibb & Sons., Inc.

Anthony J. Jackvony, for Marilyn Castrignano.

Before CAMPBELL, Chief Judge, and COFFIN and BOWNES, Senior Circuit Judges.

COFFIN, Senior Circuit Judge.

Marilyn Castrignano brought a diversity suit against, *inter alia*, Squibb & Sons, Inc. ("Squibb") for damages allegedly caused in utero by exposure to diethylstylbestrol ("DES") in 1953. She claimed to have suffered congenital gynecological abnormalities which caused miscarriages and other medical problems. The case ultimately went to trial against Squibb alone on four theories of Rhode Island law: negligence, strict liability in tort and breaches of implied warranties of merchantability and fitness.

In trying the case and instructing the jury, the district court was required to determine whether the design defect theory of strict liability was applicable on the facts of this case under Rhode Island law. The district court decided that Rhode Island would allow the action but would exempt manufacturers from strict liability under the Restatement (Second) of Torts, comment k,[1] if the product satisfied a risk-benefit balancing test. It rejected the argument that comment k exempted prescription drugs from strict liability as a matter

---

**1.** Comment k provides as follows:

*Unavoidably unsafe products.* There are some products which, in the present state of human knowledge, are quite incapable of being made safe for their intended and ordinary use. These are especially common in the field of drugs. An outstanding example is the vaccine for the Pasteur treatment of rabies, which not uncommonly leads to very serious and damaging consequences when it is injected. Since the disease itself invariably leads to a dreadful death, both the marketing and the use of the vaccine are fully justified, notwithstanding the unavoidable high degree of risk which they involve. Such a product, properly prepared, and accompanied by proper directions and warning, is not defective, nor is it *unreasonably* dangerous. The same is true of many other drugs, vaccines, and the like, many of which for this very reason cannot legally be sold except to physicians, or under the prescription of a physician. It is also true in particular of many new or experimental drugs as to which, because of lack of time and opportunity for sufficient medical experience, there can be no assurance of safety, or perhaps even of purity of ingredients, but such experience as there is justifies the marketing and use of the drug notwithstanding a medically recognizable risk. The seller of such products, again with the qualification that they are properly prepared and marketed, and proper warning is given, where the situation calls for it, is not to be held to strict liability for unfortunate consequences attending their use, merely because he has undertaken to supply the public with an apparently useful and desirable product, attended with a known but apparently reasonable risk.

of law where proper warnings were given. The court instructed the jury to apply a risk-benefit analysis to determine whether the product was unreasonably dangerous, and thus, whether Squibb was subject to strict liability. The jury found Squibb strictly liable and in breach of the implied warranty of merchantability. Damages were awarded in the amount of $400,000.

After the verdict, the district court reserved judgment on the defendant's motions for new trial and judgment n.o.v., certifying the following three questions to the Rhode Island Supreme Court concerning the applicability of comment k:

1. Does the State of Rhode Island recognize an action for damages for personal injuries in the circumstances presented in this action based on theories of strict liability in tort and breach of warranty of merchantability?

2. Does comment (k) to § 402A, Restatement of Torts apply in Rhode Island to an action for damages for personal injuries in the circumstances presented in this action in an action based upon [the] theory of strict liability in tort?

3. If comment (k) applies to this type of action, is its application to the prescription drug DES a matter of law or a question of fact, and, if a question of fact, which party has the burden of proof?

The Rhode Island Supreme Court answered the certified questions in an opinion reported as *Castrignano v. E.R. Squibb & Sons, Inc.*, 546 A.2d 775 (R.I.1988). On the first question, the court held that the facts of this case could support an action based on the theories of strict liability (both de-

sign defect and failure to warn) and implied warranty of merchantability. Second, in strict liability, comment k is a defense to an allegation of design defect, but not to an allegation of failure to warn, which continues to be governed by comment j, adopted in an earlier case.[2] It is also a defense to an implied warranty of merchantability claim. Finally, the application of comment k is a mixed question of law and fact to be decided by the judge only if reasonable minds could not differ, but otherwise by the jury. If the benefits of the drug are determined to outweigh the risks, the manufacturer is exempt from strict liability. The defendant has the burden of proving the defense.

Following the *Castrignano* decision, the district court ruled on its reserved motions for new trial and judgment notwithstanding the verdict. Squibb argued a number of inadequacies in the jury instructions in light of the Rhode Island Supreme Court's decision regarding comment k. The district court decided that whatever deficiencies may have been present, Squibb had received the benefit of a balancing test instruction despite the fact that it had failed to introduce any evidence that entitled it to the comment k defense. The court therefore denied the motions.

On appeal, the defendant challenges only the denial of a new trial, arguing that the Rhode Island Supreme Court's decision amounts to a change in the law that requires the grant of a new trial. Castrignano cross-appeals the date from which prejudgment interest was calculated. Having reviewed carefully the substantial record in this case and the governing law, we affirm

---

**2.** Comment j states:

*Directions or warning.* In order to prevent the product from being unreasonably dangerous, the seller may be required to give directions or warning on the container, as to its use. The seller may reasonably assume that those with common allergies, as for example to eggs or strawberries, will be aware of them, and he is not required to warn against them. Where, however, the product contains an ingredient to which a substantial number of the population are allergic, and the ingredient is one whose danger is not generally known, or if known is one which the consumer would reasonably not expect to find in the product,

the seller is required to give warning against it, if he has knowledge, or by the application of reasonable, developed human skill and foresight should have knowledge of the presence of the ingredient and the danger. Likewise, in the case of poisonous drugs, or those unduly dangerous for other reasons, warnings as to use may be required.

.    .    .    .    .

Where warning is given, the seller may reasonably assume that it will be read and heeded; and a product bearing such a warning, which is safe for use if it is followed, is not in defective condition, nor is it unreasonably dangerous.

the district court's decision. We affirm, too, the award of prejudgment interest.

## I.

The Restatement (Second) of Torts, including comments j and k, was in existence for over 20 years prior to the time of trial in this case. Rhode Island adopted the Restatement position on strict liability in *Ritter v. Narragansett Electric Co.*, 109 R.I. 176, 283 A.2d 255 (1971). The Rhode Island court also had approved the comments regularly. *See Thomas v. Amway Corp.*, 488 A.2d 716, 722 (R.I.1985) (comment j); *Brimbau v. Ausdale Equipment Rental Corp.*, 440 A.2d 1292, 1297 (R.I. 1982) (comment f); *Roman v. Westinghouse Electric Co.*, 114 R.I. 451, 456, 336 A.2d 555, 558 (1975) (comment m); *Ritter,* 109 R.I. at 190, 283 A.2d at 262 (comment g).

Squibb argues that because Rhode Island had yet to affirmatively apply comment k, the court's eventual adoption of the comment amounts to a change in the law that entitles it to a new trial. Squibb devotes its entire brief to argument concerning the appropriateness of a new trial in cases where there has been a change in the law before the decision has become final. *See Vandenbark v. Owens–Illinois Glass Co.*, 311 U.S. 538, 61 S.Ct. 347, 85 L.Ed. 327 (1941).

■■■ The proposition itself is unquestionably valid. In *Vandenbark,* the court indicated that

> [T]he dominant principle is that *nisi prius* and appellate tribunals alike should conform their orders to the state law as of the time of the entry. Intervening and conflicting decisions will thus cause the reversal of judgments which were correct when entered.

311 U.S. at 543, 61 S.Ct. at 350. Nowhere in its brief, however, has the defendant argued why the facts of this case would support a new trial. The decision of the Rhode Island court was clearly "intervening," but it is not clear that it is "conflicting" or that it states a sufficiently new proposition to require remand. Instead, this case appears to be governed by the same law under which the trial court instructed.

Squibb mentions five differences between the instruction given by the trial court and the law as stated by the Rhode Island Supreme Court.[3] We have reviewed these asserted differences to determine, first, if they could have led to a different outcome in this case. We have then looked to see if any remaining differences are properly considered sufficiently new law that Squibb should be exempted from the requirement of contemporaneous objection. We conclude that any possible errors in the district court's instructions that may have prejudiced Squibb should have been, but were not, objected to, and thus cannot support Squibb's demand for a new trial.

The manufacturer first claims that the *Castrignano* decision held that the theories of implied warranty of merchantability and strict liability are parallel theories in contract and tort. Comment k is therefore available as a defense under both theories. *See Castrignano,* 546 A.2d at 783. Squibb argues that because the risk-benefit instruction given by the district court was directed only to strict liability, there was error.

The jury, however, found Squibb liable under *both* theories. Squibb was given the benefit of the balancing test under the strict liability theory. Even if the *Castrignano* statement that the theories are indistinguishable on the facts of this case amounts to a change in the law, a question

---

**3.** We note that Squibb nowhere argues the precise ways in which these asserted differences prejudiced its case. Instead, after listing the perceived differences, Squibb relies on a generalized argument about how, in a diversity case, intervening changes in state law require a federal court to award a new trial. Thus, we have been forced to understand Squibb's argument from short paragraphs listing each supposed difference under a subsection of Squibb's "Statement of the Case." Appellant's brief at 18–20. To the extent that we may not have fully understood Squibb's contentions, we charge Squibb with its own obligation to raise arguments before the court. This court should not be expected or required to flesh out the bare bones of an argument where highly qualified and experienced counsel represent a client.

we do not answer, "[s]ince damages were the same in either event, ... defendant was not harmed. Rather, it was a case where all roads lead to Rome." *Brochu v. Ortho Pharmaceutical Corp.,* 642 F.2d 652, 662 (1st Cir.1981).

Squibb next argues that the Rhode Island decision required the district court to make a ruling on whether the perceived benefits exceeded the perceived risks before sending the issue to the jury. This argument misconstrues the Rhode Island court's decision. The *Castrignano* opinion requires that the balancing test be applied by a jury unless the court finds that reasonable persons could not differ. *Castrignano,* 546 A.2d at 782. The district court was not required to rule on the balancing test. It was only required to do so if it determined that, as a matter of law, only one result reasonably could be reached. The district court concluded that the issue was one on which reasonable minds could differ and presented it to the jury. *Castrignano v. E.R. Squibb, Inc.,* No. 82–0717 B, Order at 3 (D.R.I. July 29, 1989). This is precisely what the Rhode Island court intended.

Third, Squibb maintains that no jury instruction was given distinguishing the strict liability theories of failure to warn and design defect. Because the Rhode Island Supreme Court stated that comment k is a defense only to the design defect theory, *Castrignano,* 546 A.2d at 780, Squibb complains that the district court erred by not distinguishing between the theories.

Even if it amounted to a change in the law, this supposed error would not support Squibb's request for remand because such a failure could only have inured to its benefit. If the jury believed it was required to balance benefits against risks on the failure to warn prong, Squibb got more than it was entitled to under the *Castrignano* holding.

Fourth, Squibb states:

The Rhode Island Supreme Court held that the trier of fact must balance the known or perceived risks of the drug, as measured by the state of human knowledge *at the time the product was used,*

to determine whether or not the product is exempt from strict liability. (*Castrignano,* 546 A.2d at 780; RA:667.) Although the jury was instructed that it "may" (as opposed to must) strike a balance between the expected beneficial effects of the drug as opposed to its harmful effects, if any, the instructions did not make this balancing test the predicate to the determination of whether strict liability applied to the design defect theory of the case.

Appellant's brief at 19–20 (emphasis in original). Although we have some difficulty determining the thrust of Squibb's objection, we take it that Squibb intends, in part, to imply by emphasis that the district court failed to instruct the jury that it must balance the benefits and risks known or knowable at the time the product was used. Squibb also seems to say that the court erred by telling the jury that it "may" apply the balancing test as opposed to "must" apply that balance. Finally, Squibb appears to claim that the jury was not told that Squibb could not be held strictly liable if the risk-benefit test was found to weigh in Squibb's favor.

The district court instructed the jury that:

A product is unreasonably dangerous when it is dangerous to an extent beyond that which would be contemplated by the ordinary consumer who uses it with the ordinary knowledge common to the community as to its characteristics. The product involved in this lawsuit is a drug. We all know that there is some danger in the use of any drug. Medical science is not yet developed to the point of perfection. Thus, in determining whether or not a drug is unreasonably dangerous, your emphasis should be on the term "unreasonable." In this determination you should consider the state of scientific and medical knowledge at the time the drug was manufactured; and you may strike a balance between the expected beneficial effects of the drug as opposed to its harmful effects, if any.

Appendix at 1483–1484. Thus, the district court clearly told the jury that it was to

"consider the state of scientific and medical knowledge at the time the drug was manufactured." Any suggestion by Squibb to the contrary is not supported. This aspect of the instruction is also consistent with the Rhode Island court's opinion.

Moreover, the district court told the jury that the plaintiff had to prove the product was unreasonably dangerous to find the defendant strictly liable. The instruction on the risk-benefit analysis provided a definition for the term "unreasonable." This, too, is consistent with *Castrignano.* It also belies Squibb's contention that the court did not instruct the jury that the balancing test was a predicate to a finding of strict liability.

The only point Squibb arguably raises about the instruction that could be construed to differ from Rhode Island law is the district court's use of the word "may" in its phrase "you may strike a balance." We reject, however, Squibb's contention that this difference amounts to a change in the law requiring a new trial.

First, our reading of the instruction as a whole indicates that the word "may," when read in context, in effect instructed the jurors that they "should" weigh the risks against the benefits in deciding whether the defendant should be found strictly liable. The sentences preceding the word specifically instructed that *all* prescription drugs contain some risks and that medical science has not reached the point of perfection. In determining what was reasonable the court instructed that knowledge at the time of manufacture *should* be considered. It then told the jury to consider whether the product was unreasonably dangerous in light of the risks and benefits. The use of the word "may" does not realistically undercut the imperative of the entire instruction.

In addition, both the trial court and Squibb's counsel appeared to believe that the jury was *required* to balance the risks against the benefits.[4] In context, we do not believe that the use of the word "may" renders the instruction inconsistent with the requirements of Rhode Island law.

More importantly, Squibb never objected to this aspect of the instruction. While Squibb did object to the risk-benefit test, that objection did not go to any specific problem with the instruction as given, but rather to the application by a jury of a balancing test at all.[5]

Fed.R.Civ.P. 51 requires that the grounds for objection be clearly stated after the charge to give the judge an opportunity to correct his error. *See, e.g., Linn v. Andover Newton Theological School,*

---

4. The colloquy prior to the jury charge included the following interchange:

> MS. WILSON (Squibb attorney): We agree with the instruction up to the point where *the focus of the unreasonable requirement is on the utility of the product versus its harmful effects,* and our position is simply that 402a requires that where the product has been warned of or contains warnings that refer and reflect to all known or knowable risks, then that product at that point cannot be considered either defective or unreasonably dangerous.

> . . . . .

> THE COURT: I don't think that the Rhode Island Supreme Court would say that a person who buys drugs is limited to a negligence action. I think they would say that that person still has an action for strict liability, however, and I think they would say that we are not going to swallow Comment K wholeheartedly. . . . The question is whether or not it is unreasonably dangerous, and deciding that you *should* look into the question of what do the experts know, what is the state of the

scientific knowledge at this piont [sic] in time and *does the benefit of providing this kind of medication outway [sic] the risk of using it.* I think that is what Rhode Island would say.

> . . . . .

> MS. WILSON [Squibb attorney]: I think what the Court has done in this case is make an extra step *by requiring that there be evidence that the product was beneficial or that its benefits outway [sic] the harmful effects that it might have before the product has the benefit of Comment K,* and it is Squibb's position that Comment K protection is automatic. . . .

Appendix at 1358–1363 (emphasis added).

5. *See supra* n. 4. After the jury was charged, Squibb similarly directed its objection to the giving of a balancing instruction to the jury.

> MS. WILSON: Squibb also objects to the strict liability formulation found on pages 27 and 27 a of the Court's instructions insofar as it finds a balances [sic] test to find the drug unreasonably dangerous.

Appendix at 1502–1503.

*Inc.,* 874 F.2d 1, 5 (1st Cir.1989). Squibb has cited cases which indicate that when a rule of law has undergone substantial change, a court will order a new trial despite the failure of counsel to object. *See Saunders v. State of Rhode Island,* 731 F.2d 81 (1st Cir.1984); *Hegger v. Green,* 646 F.2d 22 (2d Cir.1981). As in the instant case, the court in *Saunders* certified three novel questions to the Rhode Island Supreme Court after the return of the jury verdict. Despite the absence of an objection, this court in *Saunders* stated that "in light of the unusual certification procedure used, the basis for objection only became known long after the charge was given." *Saunders,* 731 F.2d at 85.

But in *Saunders,* unlike in this case, the Rhode Island court imposed a new requirement for the plaintiff to prove in a prison negligence action. Neither the district court nor the parties had contemplated the element.[6] In the case at bar, rather than imposing a radically different legal requirement, the *Castrignano* court confirmed that the trial court had accurately interpreted Rhode Island law by applying comment k on a case-by-case basis rather than as a matter of law. The state court merely clarified some of the pertinent ground rules in applying the law.[7]

We fail to see how the arguable difference in the instruction's use of "may" rather than "must" or "should" entitles Squibb to a new trial. Rather, this is the kind of imprecision that Rule 51 is designed to address, and parties are expected as a matter of course to object at trial to preserve such an issue for appeal.

The purpose of Rule 51 has been stated often:

> If there is a problem with the instructions, the judge must be told *precisely*

what the problem is, and as importantly, what the attorney would consider a satisfactory cure. We will not order a new trial on the basis of an alleged error that the district court may have been willing and able to correct had he been aware of the basis for counsel's objection.

*Andover Newton,* 874 F.2d at 5 (emphasis in original). In this case, as we have noted before, both the judge and counsel appeared to think the court had required the balancing test. *See supra* n. 4. If counsel had objected to the use of "may" at trial, the district court would have been able—and likely—to correct any problem with the instruction.

Unlike in *Saunders,* we believe that the basis for objection in this case should have been clear to Squibb. The district court's position could not have come as a surprise to Squibb, for it knew that different courts were treating the applicability of comment k differently. *See, e.g., Feldman v. Lederle Laboratories,* 97 N.J. 429, 447–448, 479 A.2d 374, 383–384 (1984) ("[w]hether a drug is unavoidably unsafe should be decided on a case-by-case basis. . . ."); *Collins v. Eli Lilly & Co.,* 116 Wis.2d 166, 342 N.W.2d 37 (1984) (rejecting the applicability of comment k); *Leibowitz v. Ortho Pharmaceutical Corp.,* 224 Pa.Super. 418, 433–434, 307 A.2d 449, 458 (1973) (prescription drugs, when properly tested, labeled and approved and accompanied by warnings are unavoidably unsafe as a matter of law). Squibb was aware of these cases, and in fact cited to several in its trial brief. Appendix at 303–304. The district court specifically stated that its instruction reflected its projection of what the Rhode Island Supreme Court would say about comment k, demonstrating that it expected Rhode

---

**6.** We also note that this language from *Saunders* supports only an alternative holding. The decision rests primarily on an inconsistency between the general and special verdicts requiring a new trial under Fed.R.Civ.P. 49(b).

**7.** To the extent that Squibb's brief suggests that the Rhode Island court's eventual adoption of comment k on a case-by-case basis through the application of a risk-benefit balancing test amounts to a "change in the law," it is clearly

foreclosed from this argument. The only change relevant to a consideration of defendant's right to a new trial is that caused by the "intervening and conflicting" aspects of the *Castrignano* decision. *Vandenbark,* 311 U.S. at 543, 61 S.Ct. at 350. Our review is limited to whether the differences between the district court's articulation of the comment k balancing test and the test articulated by the Rhode Island court are sufficiently substantial or conflicting to entitle Squibb to a new trial.

Island to follow those courts that weighed the benefits against the risks on a case-by-case basis. *See, e.g., Feldman,* 97 N.J. at 447–448, 479 A.2d at 383–384; *Belle Bonfils Memorial Blood Bank v. Hansen,* 665 P.2d 118 (Colo.1983); *Gaston v. Hunter,* 121 Ariz. 33, 588 P.2d 326 (1978). An earlier federal district court, interpreting Rhode Island law, also had rejected the comment's application as a matter of law by holding that the application of comment k to prescription drugs was determinable only after the presentation of facts on the issue. *Oresman v. G.D. Searle & Co.,* 321 F.Supp. 449 (D.R.I.1971) (refusing to grant summary judgment on the theory that comment k exempted a prescription drug from strict liability as a matter of law). If a balancing test was to be applied in a case-by-case examination, as opposed to the application of comment k as a matter of law, it obviously was in Squibb's interest to insist that the jury be *required* to weigh the benefits against the risks.

Despite this, Squibb chose to limit its argument to the district court to a single theory: a prescription drug properly prepared and marketed, and accompanied by proper warnings of dangers reasonably foreseeable and knowable at the time of marketing, is not unreasonably dangerous or defective because it is unavoidably unsafe as a matter of law. It refused to acknowledge that the district court was applying comment k on a case-by-case basis or to examine the content of the court's approach on that basis. In so doing, Squibb failed to assume its obligation to object to the potential harmful effects of the specific instruction given.

We therefore find that, even if the use of the word "may" could have been taken to make the balancing test optional, Squibb has not preserved its objection on appeal. There has been no change in the law which could excuse Squibb from that requirement. It was clearly not plain error, especially in light of our conclusion that the jury, in all likelihood, viewed the instruction properly.

Squibb's fifth and final assertion of a change in the law concerns the absence of an instruction stating that Squibb could only be held strictly liable for a failure to warn of dangers that were reasonably foreseeable and knowable. Such a failure to warn instruction was given under the negligence section of the jury charge.

The short answer to Squibb's claim is that the requirement of foreseeability was not new law. The Rhode Island Supreme Court specifically stated:

> [W]e shall reaffirm our interpretation of comment j in *Thomas v. Amway Corp.,* 488 A.2d at 722. Under failure-to-warn analysis, a product is defective if the seller does not warn of the product's danger. *Id.* In *Thomas,* however, this court limited the failure-to-warn theory by ruling that a seller need only warn of those dangers that are reasonably foreseeable and knowable at the time of marketing.

*Castrignano,* 546 A.2d at 782. Squibb was unquestionably chargeable with objecting to the absence of this instruction. Although Squibb proposed such an instruction to the court, it did not object to its absence in the long colloquy before the jury was charged nor when making its objections after the charge. Squibb has waived this objection to the jury instructions. Moreover, since the only instruction given on failure to warn included this foreseeability requirement, prejudice to Squibb is highly doubtful.

In conclusion, we find that beneath the rhetoric concerning an intervening change in state law requiring a new trial, Squibb has pointed to no substantial difference between the instructions given and those now required by Rhode Island law that could have harmed Squibb. As to any minimal difference that may have affected Squibb, we find that the Rhode Island court's decision did not in fact change the law from that applied by the district court, and that Squibb has waived its right to challenge the instruction by failing to object. Squibb gambled that it would prevail on its claim of entitlement to the application of comment k as a matter of law. That gamble did not pay off.

Finding as we do, we do not reach the basis relied upon by the district court, that Squibb failed to produce evidence to support a comment k instruction.

## II.

■ On cross appeal, Castrignano claims that the clerk of court erred in awarding prejudgment interest dating from November 4, 1979, three years prior to the filing of plaintiff's cause of action, rather than from the date of injury. The only issue is whether the date of accrual of a cause of action is the same under Rhode Island's prejudgment interest provision, R.I.Gen. Laws, § 9–21–10 (1981),[8] and the statute of limitations provision, R.I.Gen.Laws, § 9–1–14 (1985).[9]

The Rhode Island Supreme Court recently interpreted the prejudgment interest statute in *Cardi Corp. v. State*, 561 A.2d 384 (R.I.1989). In *Cardi*, the court indicated that a cause of action does not accrue within the meaning of this statute until the first date an injured party has a right to seek judicial relief. *Id.* at 387–388. The *Cardi* court rejected a contractor's argument that prejudgment interest should be awarded from the date damages occurred. The court instead held that the accrual date was the date the General Assembly first waived sovereign immunity, allowing Cardi to proceed with its cause of action. *Cardi* thus supports the clerk's determination that prejudgment interest began to run when the action accrued for purposes of the statute of limitations.

Moreover, the intent of the statute supports this rule. Under Rhode Island law, prejudgment interest is not an element of damages. *Andrade v. State*, 448 A.2d 1293, 1295 (R.I.1982). The intent of the statute is "to establish a device to encourage settlements of cases sounding in tort

without undue delay." *DiMeo v. Philbin*, 502 A.2d 825, 826 (R.I.1986). No inducement to settle a case can have existed prior to the time the suit was capable of being brought.

We therefore believe that both *Cardi* and the intent of the statute firmly support the clerk's determination that prejudgment interest should be awarded from the date the cause of action accrued for statute of limitations purposes.

In this case, the running of the statute of limitations is governed by *Anthony v. Abbott Laboratories*, 490 A.2d 43 (R.I.1985) (DES product liability action), where the Rhode Island court held that:

> [I]n a drug product-liability action where the manifestation of an injury, the cause of that injury, and the person's knowledge of the wrongdoing by the manufacturer occur at different points in time, the running of the statute of limitations would begin when the person discovers, or with reasonable diligence should have discovered, the wrongful conduct of the manufacturer.

*Anthony*, 490 A.2d at 46. Thus, an action accrues under Rhode Island law only after the plaintiff has or reasonably should have knowledge of the manufacturer's wrongdoing.

One of the issues before the jury was when Castrignano knew or reasonably could have been expected to know of Squibb's responsibility for her injury. The jury found that the date fell within the three-year period of limitations. Based on this finding, the clerk ordered that prejudgment interest should run from November 4, 1979, the first possible date that the jury could have found the action to have accrued without being time-barred.

This determination is unquestionably correct. Both the rationale of *Cardi* and basic

---

**8.** Section 9–21–10 provides:

In any civil action in which a verdict is rendered or a decision is made for pecuniary damages, there shall be added by the clerk of the court to the amount of damages, interest at the rate of twelve percent (12%) per annum thereon *from the date the cause of action accrued* which shall be included in the judgment entered therein.

R.I.Gen.Laws, § 9–21–10 (emphasis added).

**9.** Section 9–1–14(b) provides:

Actions for injuries to the person shall be commenced and sued within three (3) years next after *the cause of action shall accrue* and not after.

R.I.Gen.Laws, § 9–1–14(b) (emphasis added).

fairness require that the term "accrue," as it occurs in the statutes governing limitations and prejudgment interest, share the same definition. Plaintiff should not be allowed to claim simultaneously that her action has not accrued for purposes of limitations until very recently, but that the action accrued for interest purposes at an earlier date.

AFFIRMED.  *Costs to plaintiff Castrignano.*